WILMINGTON HOUSING AUTHORITY, a public body corporate and politic organized and existing under the laws of the State of Delaware, Plaintiff,

v.

ROCKY MARCIANO CONSTRUCTION COMPANY, a New Jersey Corporation, et al., Defendants.

Civ.A.No. 74–41.

United States District Court, D. Delaware.

Jan. 22, 1976.

Opinion on Motion for Reargument Jan. 28, 1976.

Jerome O. Herlihy, Herlihy & Herlihy, Wilmington, Del., for plaintiff (dismissed).

David Roeberg, Roeberg & Agostini, Wilmington, Del., for defendants Rocky Marciano Construction Company and P. H. Coustenis, Inc.

John H. McDonald, Asst. U. S. Atty., Wilmington, Del., for federal defendants.

Paul H. Spiller, Kimmel, Spiller & Bradley, Wilmington, Del., for certain other defendants.

## OPINION

STEEL, Senior District Judge:

Robert B. Ketchum and Anthony Dal Nogare ("the claimants") are two of the defendants who have been impleaded in an interpleader action begun by Wilmington Housing Authority ("WHA") as the holder of monies against which various claims have been asserted. The causes of action upon which the claimants' claims are based accrued on September 23 and October 7, 1972, and are for unpaid minimum and overtime wages. The interpleader action was filed on March 8, 1974, and the answer of claimants asserting their claims to the monies (previously deposited in court by the WHA) was filed on April 19, 1974, and reaffirmed in a statement of claim which they filed on March 4, 1975.

Rocky Marciano Construction Company ("Rocky Marciano") and P. H. Coustenis, Inc., T/A Tenibac Co. ("Tenibac"), two other impleaded defendants who are asserting a claim against the deposited monies, have moved to dismiss the claims of Ketchum and Dal Nogare upon the ground that the Delaware one year statute of limitations, 10 Del.C. § 8111, applicable to actions to recover upon claims

for wages or overtime work, is a bar to their claims. If the one year Delaware statute is applicable to the claims it is clear that they are barred.

■ The claimants argue, however, that it is not the one year statute of Delaware which is governing but the two year statute of limitations found in 29 U.S.C. § 255(a). That statute applies to actions begun on or after May 14, 1947, to enforce any cause of action "for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act." [1] Claimants' argument is premised on the assumption that the claims arose under the Bacon-Davis Act. This is not the case. The Bacon-Davis Act, 40 U.S.C. §§ 276a to 276a–5, makes it mandatory for "every contract in excess of $2,000, to which the United States or the District of Columbia is a party, for construction, alteration, and/or repair, including painting and decorating, of public buildings or public works" to contain provisions for the payment of stated minimum wages to mechanics and/or laborers. The contract between WHA and Rocky Marciano from which claimants' rights arise was not a contract to which the United States or the District of Columbia was a party nor did it relate to public buildings or public works.

It is true that the Housing Act of 1949, as amended, Title 42 U.S.C. § 1416, expands the coverage of the Bacon-Davis Act to "contracts in connection with the development or administration of *Federal projects* and the furnishing of materials and labor for such projects" (emphasis by the Court). 42 U.S.C. § 1402(7) defines a "federal project" as "any project owned or administered by the Authority", and the "Authority" is defined to mean "the United States Housing Authority", 42 U.S.C. § 1402(13), now known as the Public Housing Authority ("PHA").[2] The construction of the improvements on the properties known as Eastlake and Southbridge in Wilmington were federally assisted contracts under the United States Housing Act of 1937. However, the project was not "owned or administered" by the United States Housing Authority and hence not a "federal project" to which 42 U.S.C. § 1416 (expanding the coverage of the Bacon-Davis Act) applied.

The claimants concede that the project is not *owned* by the PHA. They maintain, however, that the project is *administered* by the PHA. This argument that the project is administered by the PHA finds four-square refutation in the fact that the PHA rendered financial assistance to the WHA. This was authorized by the Public Housing Act only if the project was to be administered by the WHA. 42 U.S.C. § 1402(11) provides:

"The Authority shall enter into contracts for financial assistance with a State or State agency where such State or State agency makes application for such assistance for an eligible project which, under the applicable laws of the State, is to be developed and administered by such State or Stage agency."

Since federally-assisted housing projects must be projects "administered" by state and local housing authorities such as WHA, these projects are not "federal projects" within the meaning of the Housing Act. Several courts have faced this same question although in a different context and have held that locally owned and operated housing projects are not "federal projects." [3]

1. Claimants do not contend that the cause of action is one under the Fair Labor Standards Act of 1938 or the Walsh-Healey Act, Title 41 §§ 35 to 45.

2. See *Commission of Labor and Industries v. Boston Housing Authority*, 345 Mass. 406, 188 N.E.2d, 150, 153 (1963).

3. *United States ex rel. Kelly's Tile and Supply Co. v. Gordon*, 468 F.2d 617 (5th Cir. 1972); *Hickey v. Crow Creek Housing Authority*, 379 F.Supp. 1002 (D.S.D.1974); *United States of America for Use and Benefit of Hutto Concrete Company v. Magna Building Corporation*, 305 F.Supp. 1244 (S.D.Ga.1969); *United States of America for the Use and Benefit of*

Claimants nonetheless argue that the terms of the contract between PHA and WHA establish that the project was to be administered by the PHA. The contract's introductory clause sets forth the nature of the agreement:

" . . . the Local Authority has agreed to undertake the development and *operation* of certain low-rent housing and the PHA has agreed to render financial assistance in connection therewith." (emphasis by the Court)

This relationship is restated in sec. 2(A) of the Contract:

"The Local Authority, with the financial assistance of the PHA, has developed and is undertaking the *operation* of certain low-rent housing as defined in the Act, identified as follows: [listing the relevant projects]." (emphasis by the Court)

Since the PHA–WHA contract imposed the responsibility for operation upon the WHA, its function was one of administration by statutory definition. "Administration" is defined in 42 U.S.C. § 1402(6) as "any [and] all undertakings necessary for management, *operation, maintenance, or financing*, in connection with the low-rent housing or slum-clearance project, subsequent to physical completion". (emphasis by the Court).

Other provisions in the contract are consistent with the introductory clause and sec. 2(A) and require WHA to operate the project. Thus, the contract states that WHA is to operate each project (§ 201), fix the income limits for occupancy (§ 204), adopt and promulgate regulations establishing its admission policies (§ 206), maintain each project (§ 209), reconstruct, restore and repair each project if damaged or destroyed (§ 210), purchase equipment, materials and supplies and award contracts (§ 306), hire employees (§ 307), maintain books of account and records (§ 309), establish bank accounts (§ 401) and prepare an operating budget (§ 407). While the WHA must notify the PHA of many of its transactions and must often obtain prior approval, the activities themselves are undertaken and carried out by the WHA.

The contract between the PHA and WHA must be read as an entirety in determining wherein the administrative responsibility lay between the PHA on the one hand and the WHA on the other. The sections cited by claimants to support their view that PHA was to administer the projects are cited in the footnote.[4] It is impossible to read these sections in the light of those referred to in the preceding paragraph and the congressional purpose disclosed by the statutes which have been discussed without concluding that the WHA alone was to administer the project subsequent to its physical completion.

From what has been said it is clear that the two year statute of limitations

---

*Nobles Insulation Company v. Magna Building Corporation*, 305 F.Supp. 1246 (S.D.Ga.1969). In these cases the courts held that the Miller Act, 40 U.S.C. §§ 270a–d, which (like the Bacon-Davis Act) is made applicable to federal projects by 42 U.S.C. § 1416(1), did not apply to locally owned and operated low-rent housing projects.

4. Sections 101–115, 119 and 121–4 involve "development" of projects which involves activity prior to completion and hence are not relevant to "administration" which is limited to activities "subsequent to physical completion". Section 203 requires PHA approval for use of the projects other than as low income housing and for leasing of non-dwelling space at less than fair market value. Section 204 requires PHA approval of income limits for occupancy and rents. Section 211 contains labor provisions and refers to other labor provisions in §§ 114–119. Section 301 regulates payments in lieu of taxes made by WHA. Section 303 restricts WHA in its purchases of foreign goods and contracts with ineligible contractors. Section 304 provides for equal employment opportunity. Sections 308–311 involve the PHA in auditing the WHA's books and approving its disposition of excess property. Sections 313, 402, 404 and section 12B of Amendatory Agreement No. 7 concern the financial management of the projects and limit the WHA's authority over its funds insofar as the PHA as its creditor seeks to guarantee repayment of debts due. Sections 509, 511 and 512 are concerned with the PHA's right to terminate, the validity of notice and approval and the PHA's rights of waiver and amendment.

in 29 U.S.C. § 255(a) applicable to claims under the Bacon-Davis Act is not relevant because the claimants do not assert claims which arise under that Act or under 42 U.S.C. § 1416 which expands the coverage of the Bacon-Davis Act to federal projects.

■ Jurisdiction over the interpleader action exists because of the diversity of citizenship and the amount of the claims asserted by the parties. 28 U.S.C. § 1335. The claimants' claim is simply one which is asserted under paragraph 32 of the contract between the WHA and Rocky Marciano which specified the wages of $7.85 an hour which they should be paid. (¶ 11, Complaint for Interpleader, Answer ¶ 11 of Claimants). The Statement of Claim filed by the claimants is consistent with this, for paragraph 6 alleges: "defendants are laborers and mechanics and are defendants by virtue of their claim for unpaid wages as prescribed by the labor provision of the prime contract". Since their claims are based upon a contractually created right which arises under state law, the state statute of limitations applies.

■ The claimants maintain that the controlling state statute is 10 Del.C. § 8106 which applies a three-year limitation period to any "action based on a statute". From what has already been said it is apparent that the claimants' right to recover is not "based on a statute" but is instead a "claim for wages" governed by 10 Del.C. § 8111. *Sorenson v. Overland Corporation,* 142 F.Supp. 354 (D.Del.1956) *aff'd* 242 F.2d 70 (3d Cir. 1957) and *Sonne v. Sachs,* 314 A.2d 194 (Del.Supr.1973), cases relied upon by the claimants, are not to the contrary. The one-year limitation period of section 8111 is a complete bar to their claims.

The motion of the defendants Rocky Marciano and Tenibac to dismiss the claims of Ketchum and Dal Nogare is granted.

## ON MOTION FOR REARGUMENT

The motion for reargument filed by the claimants, Ketchum and Dal Nogare ("claimants") makes two points:

■ (1) It is contended that 10 Del.C. § 8106, which provides for a three-year statute of limitations, is applicable since the claims of claimants are "based on a promise" and that section 8111 relating to actions for the recovery of "a claim for wages, salary, or overtime for work, labor or personal services performed" which provides for a one-year statute is inapplicable. There is a seeming overlapping of the two sections because nearly every claim for wages is based upon an underlying promise, express or implied, to pay the wages. The two sections have been reconciled by the Supreme Court of Delaware in *Goldman v. Braunstein's,* 240 A.2d 577 (Del.Supr. 1968). There the court distinguished between an action for wages for services already performed to which section 8111 is relevant, and an action based on a contract for its breach prior to performance for which section 8106 is controlling. This distinction between the coverage of sections 8106 and 8111 is clearly explained by Judge Stiftel in *Brown v. Colonial Chevrolet,* 249 A.2d 439, 441 (Del.Super.1968). The claim of the claimants for wages and overtime is for services already performed and is not grounded upon a breach of contract prior to performance. The one-year statute of section 8111 is controlling.

■ (2) Claimants point out that Tenibac and Marciano, who oppose the claimants' claims, previously contended that Ketchum was an employer doing business as Blackbird Woodwork, and for this reason, being an employer, his claim cannot be for unpaid wages. This argument rests upon an interpretation of section 8111 to the effect that it applies only to a claim by an employee and not to one by an employer or independent contractor. In the context of the instant case *Sorenson v. The Overland Corporation,* 142 F.Supp. 354, 360 (D.Del.1956), *aff'd* 242 F.2d 70 (3d Cir. 1957) is not relevant despite the language in the opinion that section 8111 "was intended to bar all claims arising out of the employer-employee relationship". Section 8111 does not deal with the relationship between the parties but rather covers

claims "for wages, salary, or overtime for work, labor or personal services performed". The application of section 8111 does not depend upon the relationship of the parties but upon "the nature of the services performed". Compare *Aero Service Corporation v. Gordy,* 10 Terry 59, 109 A.2d 393, 394 (Del.Super.1954). In the instant case the claimants filed their claim "as laborers and mechanics . . . for unpaid wages". (Doc. No. 51, ¶'s 6 and 10). The wage claim here is not "incidental" as it was in *Sonne v. Sacks,* 314 A.2d 194 (Del.Supr.1973), but is the sole basis for the claim.

The motion of Ketchum and Dal Nogare is denied.