**Stephen M. CREAMER and Spud M. Burns, Plaintiffs,**

v.

**GENERAL TEAMSTERS LOCAL UNION 326, and Inland Container Corporation, a Delaware corporation, Defendants.**

**Civ. A. No. 81–515–WKS.**

United States District Court, D. Delaware.

Jan. 6, 1984.

---

Kenneth M. Roseman, D'Angelo, Ciconte & Roseman, Wilmington, Del., for plaintiffs.

Thomas L. Little, Wilmington, Del., for defendant Local 326.

Edward P. Welch, Stephen P. Lamb, Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del., Edward O. DeLaney, David L. Swider, Barnes & Thornburg, Indianapolis, Ind., for defendant Inland.

## OPINION

STAPLETON, Chief Judge:

The defendants, Inland Container Corporation ("Inland") and General Teamsters Local Union 326 ("Local 326") have moved for reconsideration of this Court's March 23, 1983 opinion, reported at 560 F.Supp. 495, denying Inland's Motion for Summary Judgment. The Court held that a material issue of fact existed as to whether fraudulent concealment by the defendants tolled the statute of limitations. Since the alleged acts of fraudulent concealment occurred before the expiration of even the shortest limitations period cited by the parties, it was unnecessary for the Court to decide which statute of limitations applies to the claims in this suit. Defendants now argue that the recent Supreme Court decision in *Del Costello v. International Brotherhood of Teamsters, et al.,* —— U.S.

——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) sets forth the statute of limitations applicable to all of the plaintiffs' claims. If the six-month statute of limitations of *Del Costello* is applicable to all claims in this case, then, say the defendants, the suit must be dismissed as the alleged acts of concealment occurred after the statute of limitations had already run.

Defendants argue that *Del Costello* adopts a six-month statute of limitations for all suits brought under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and that, under *Wilkes-Barre Pub. v. Newspaper Guild, Etc.*, 647 F.2d 372 (3d Cir.1981), all state causes of action that will require the court to construe and enforce the provisions of a collective bargaining agreement are preempted and absorbed, where appropriate, as part of the federal common law developed under section 301. Defendants further argue that the *Del Costello* rationale requires that the six-month statute of limitations be applied as well to the plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*

■ The issue facing the Court in this case is the familiar one of what statute of limitations to apply where Congress has enacted federal legislation but failed to provide a limitations period as an integral part of such legislation. This is only one example of the interstitial federal lawmaking that the courts are required to engage in because of the inevitable incompleteness of legislation. It is presumed that Congress did not intend that there be no time limit on bringing such suits, and, as a general rule, the federal courts "borrow" the most analogous state statute. However, the federal courts are not required to mechanically apply state statutes of limitations where resort to state law would "frustrate or interfere with the implementation of national policies." *Del Costello*, —— U.S. at ——, 103 S.Ct. at 2289, *quoting Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977).

In *Auto Workers v. Hoosier Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), the Supreme Court held that the general rule of resort to state law is not inapplicable in the labor-management relations context despite the need for uniformity in the field of federal labor law. *Hoosier* involved a suit brought by the union against the employer for breach of a collective bargaining agreement. In finding the suit governed by the state limitations period for actions on an unwritten contract, the Court likened this variety of section 301 suit to an ordinary breach of contract action. The Court explicitly declined, however, to consider whether other kinds of section 301 suits might not call for a uniform federal limitations period. *Id.* at 705, n. 7, 86 S.Ct. at 1113, n. 7. The Court concluded that the federal labor policies underlying this type of section 301 suit did not require departure from the general rule: "The need for uniformity, then, is greatest where its absence would threaten the smooth functioning of those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective bargaining agreement and the private settlement of disputes under it. For the most part, statutes of limitations come into play only when these processes have already broken down. Lack of uniformity in this area is therefore unlikely to frustrate in any important way the achievement of any significant goal of labor policy." *Id.* at 702, 86 S.Ct. at 1111.

*Del Costello* does not alter the Court's holding in *Hoosier*. Rather, it considers the statute of limitations issue in the area left open in *Hoosier*, the area where there is the greatest danger that private dispute resolution under labor contracts will be disrupted. In particular, *Del Costello* applies to the so-called *Vaca-Hines* suit, a hybrid action involving two claims: a section 301 claim against the employer for breach of the collective bargaining agreement, and a suit against the union for breach of the duty of fair representation. *See Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). The Supreme Court has characterized these suits as constitut-

ing a "direct challenge to the private settlement of disputes under [the collective bargaining agreement]." *Del Costello*, ——— U.S. at ———, 103 S.Ct. at 2291. The Court noted that this type of lawsuit has no close state law counterpart, but that it bears a strong family resemblance to claims of unfair labor practices brought before the National Labor Relations Board. The Court then concluded that state limitations periods were either too short or too long to adequately protect the interests of the employees and yet ensure the proper functioning of the various grievance and arbitration mechanisms so vital to the prompt and efficient resolution of labor disputes. By contrast, section 10(b) of the National Labor Relations Act, which sets a six-month period for filing charges of unfair labor practices before the NLRB, was designed with precisely these competing interests in mind. The Court determined, therefore, that hybrid section 301/fair representation suits are governed by a six-month statute of limitations.

Although the pleadings in this case are duplicative and far from explicit as to the causes of action being alleged, the Court understands plaintiffs' amended complaint to state the following five claims:

1) Breach by Local 326 of its duty of fair representation/breach by Inland of the collective bargaining agreement (under the theory that Inland is a co-employer).

2) Intentional interference by Inland with the performance by Local 326 and Universal Coordinators of their business obligations to plaintiffs.

3) Breach of fiduciary duty by Local 326.

4) Civil conspiracy to deprive plaintiffs of contractual rights.

5) Racketeering under 18 U.S.C. § 1961.

■ The first claim falls squarely within that type of hybrid section 301/fair representation suit described in *Vaca* and *Hines*. Under *Del Costello*, this claim is governed by the six-month statute of limitations of section 10(b) of the NLRA, and the parties are in agreement as to this issue. Similarly, the parties agree that under *Wilkes-Barre*, the charges of intentional interference with business obligations and breach of fiduciary duty do not have any independent existence as state law claims. Whether these allegations state a claim upon which relief can be granted is a matter of the federal common law of labor contracts under section 301. Although not every claim brought under section 301 is automatically governed by a six-month statute of limitations, these claims arise in the context of a *Vaca-Hines* suit and focus on the collective bargaining agreement. I hold, therefore, that these claims are likewise subject to a six-month limitations period.

■ The fourth claim charges defendants with participation in a civil conspiracy to deprive plaintiffs of their rights under the collective bargaining agreement. Plaintiffs argue that state civil conspiracy claims are an exception to the preemption rule because states have a deep and compelling interest in dealing with such matters. It is apparent, however, that merely tacking an allegation of conspiracy to any set of facts does not magically invest the claim with a compelling state interest. If that were the case, the doctrine of federal preemption of labor law would be virtually wiped out, considering the ease of appending a charge of conspiracy to any fact pattern. *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1253 (2d Cir.1970), does not indicate that state conspiracy claims in the labor field are not preempted because of some overwhelming state interest. To the contrary, the Court held that the conspiracy claim there asserted was preempted by federal law. In any event, the *Wilkes-Barre* case strongly suggests that plaintiffs' civil conspiracy claim, based as it is upon the collective bargaining agreement, states a claim, if at all, within section 301. Since it arises in the context of a *Vaca-Hines* suit and involves the same facts, it is governed by the six-month statute of limitations adopted in *Del Costello*.

■ The final claim alleges violations of the RICO statute. RICO creates a new federal cause of action independent of the "predicate acts" that make up the "pattern

of racketeering activity." 18 U.S.C. § 1961(5). The defendants argue that under the rationale of *Del Costello* we should apply the six-month statute of limitations of section 10(b) of the NLRA to the RICO claims as well. In support of this position, defendants point out that the RICO claims are a product of the same factual situation that gives rise to the section 301 claims and that the facts alleged in support of the RICO claims are substantially the same as those alleged in support of plaintiff's other claims.

■ *Del Costello* reemphasizes the principle that state law should not be mechanically imported to the detriment of a federally created cause of action. Its rationale suggests also that a superficially analogous federal statute of limitations should not be borrowed without considering whether or not congressional policies will be furthered thereby. "[R]esort to state law remains the norm for borrowing limitations periods" and a federal statute will be adopted only where it provides a closer analogy and where "the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial rulemaking." *Id.* — U.S. at —, 103 S.Ct. at 2294.

The federal six-month statute was applied in *Del Costello* because it best served the careful balance arrived at by Congress to promote rapid and efficient private resolution of disputes arising under labor contracts. There are far weightier concerns involved, however, when the affairs of unions and employers are being conducted through a pattern of racketeering activity. When Congress enacted RICO its target was organized criminal conduct. When it included a private, treble damage remedy, it sought to deter such conduct through encouraging private enforcement. Borrowing a six-month federal limitations period for RICO suits arising in a labor-manage-ment relations context would not, I believe, be consistent with the congressional goals underlying the RICO statute.

■ An employee in a *Vaca-Hines* situation can ordinarily be expected to know immediately when his rights under the collective bargaining agreement have been violated and the frustration of the grievance mechanism will normally be discerned shortly thereafter. It is not asking too much to require him or her to institute a section 301 action within six months. An employee is not in a position to institute a comparable RICO suit, however, until he or she knows not only of the breach and the frustration of the grievance process but also of the predicate offenses constituting the pattern of criminal activity. Given the criminal nature of this activity, an employee may well not learn of it until an indictment is returned charging a RICO offense or the individual predicate offenses.[1] Moreover, even when one has a suspicion that one or more predicate acts may exist, an investigation which covers the ten-year statutory period is likely to be very time consuming. For these reasons, utilization of a limitations period as short as six months would significantly reduce the number of private RICO suits commenced and thereby substantially diminish the deterrent role which Congress expected civil litigation to play.[2] Accordingly, I decline to apply the federal limitations period urged by the defendants, and following the normal rule of *Hoosier*, look to the most analogous state statute of limitations.

Having concluded that the "most analogous state statute" governs plaintiffs' RICO claims, I must determine which Delaware statute of limitations to apply. There is no disagreement as to the applicability of Delaware law, as opposed to the law of any other state. The parties have cited three statutes, 10 Del.C. § 8111, 10 Del.C.

---

1. Criminal proceedings under RICO are governed by a five-year statute of limitations. State criminal proceedings are likely to be governed by statutes of similar length.

2. While it is true that tolling would frequently provide some relief from a six-month statute in private RICO cases, litigating tolling issues entails substantial litigation time and expense as well as risk for a plaintiff. As a result a six-month limitations period would discourage litigation even in those cases in which a plaintiff can assert a tolling argument.

§ 8119, and 10 Del.C. § 8106, as governing the causes of action in this case.

■■■■ The first of these, 10 Del.C. § 8111, provides for recovery of wages or salary for work or services already performed:

> No action for recovery upon a claim for wages, salary, or overtime for work, labor, or personal services performed, or for damages ..., or for interest or penalties resulting from the failure to pay any such claim, or for any other benefits arising from such work, labor, or personal services performed or in connection with any such action, shall be brought after the expiration of one year from the accruing of the cause of action...

The caselaw supports the interpretation that section 8111 applies only where services have been performed. *Goldman v. Braunstein's, Inc.*, 240 A.2d 577 (Del.Sup. 1968); *Wilmington Hous. Auth. v. Rocky Marciano Constr. Co.*, 407 F.Supp. 228 (D.Del.1976). The claims covered by this statute thus bear little resemblance to the RICO claims asserted in this case.

■■■■ The second statute that I have been called upon to consider is 10 Del.C. § 8119, which governs claims for personal injuries:

> No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained...

Defendants contend that the two-year period of section 8119 applies because plaintiffs seek relief for "past and future mental anguish." They cite no caselaw in support of this position and it is apparent that the essence of plaintiffs' injury is termination of employment with resulting loss of wages, not personal injury.

■■■■ The general three-year limitations period set forth in section 8106 appears to cover actions most analogous to plaintiffs' RICO claim; section 8106 provides in pertinent part:

> ... no action based upon a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action...

In particular, section 8106 has been held to govern suits involving claims of civil conspiracy. *Glassberg v. Boyd*, 35 Del.Ch. 293, 116 A.2d 711, 717 (1955). A civil RICO claim bears an especially close resemblance to a claim of civil conspiracy under state law. Section 8106 also covers actions for recovery of wages where breach of contract prevented performance of the called-for services. *Wilmington Housing Auth. v. Rocky Marciano Constr. Co.*, 407 F.Supp. 228 (D.Del.1976). Section 8106 is also the appropriate provision for actions based upon a statute, as is the case for RICO claims.

■■■■ I further conclude that defendants are not entitled to summary judgment on the ground that plaintiffs' RICO claim is barred by the three-year limitations statute. This claim is both a federally created claim and a claim in the nature of a fraud claim. *United States v. Boffa*, 688 F.2d 919, 930–931 (3d Cir.1982). As a result, the applicable rule is "that where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'" *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946).

It is apparent, and plaintiffs do not dispute, that they had sufficient information in 1977 to require that they make a diligent inquiry concerning the circumstances of Preferred's replacement of Universal. They knew of their termination and they subjectively believed as a result of rumors concerning a similar situation at Crown Zellerbach that there was a connection between Preferred and Universal. As a result of this subjective belief they caused an

NLRB investigation to be commenced by filing affidavits alleging, on information and belief, that such a connection existed.

 I cannot say as a matter of law, however, that plaintiffs had "knowledge" of their RICO claim, as that term is used in a tolling context, in 1977 or, indeed, at any point prior to November 24, 1979, the date which precedes their filing date by three years. Knowledge in this context does not, of course, mean personal knowledge or indisputable proof. It means such information, considering both its content and source, as would prompt a reasonably prudent person to undertake a lawsuit to enforce his or her claim. Contrary to defendants' assertion, the fact that plaintiffs accused Universal and Local 326 of unfair labor practices before the NLRB does not mean, as a matter of law, that plaintiffs knew of their RICO claims against Inland and the Union in December of 1977. Plaintiffs have testified that they had no knowledge or information, at least prior to the availability of the transcript from the Boffa criminal trial, that Frank Sheeran, the Union President, received a bribe in connection with Universal's termination of plaintiffs or that Inland was a participant in an agreement to terminate plaintiffs. I believe a jury could so find and without some information concerning these matters, plaintiffs could not file suit on the claims which they here press.

I also conclude that defendants are not entitled to summary judgment on the ground that plaintiffs did not act with reasonable diligence in attempting to learn about the circumstances surrounding their July 1, 1977 termination. As Judge Leahy observed in *Tobacco and Allied Stocks v. Transamerica Corp.*, 143 F.Supp. 323, 331 (D.Del.1956):

> [T]he duty of reasonable diligence is an obligation imposed by law solely under the peculiar circumstances of each case, including existence of a fiduciary relationship, concealment of the fraud, opportunity to detect it, position in the industry, sophistication and expertise in the financial community, and knowledge of related proceedings.

I cannot say as a matter of law that reasonable diligence required plaintiffs to do more than they in fact did after the NLRB investigation failed to find any reason to believe even that Universal and Preferred were connected.

Plaintiffs are entitled to go to trial on their RICO claims against Inland and their union.