Allen J.H. QUILLEN and Dorothy L. Quillen, Defendants, Appellants,

v.

Jane F. SAYERS, individually and as the personal representative of the Estate of Frank P. Gelding, Jr., Plaintiff, Appellee.

Supreme Court of Delaware.

Submitted: March 6, 1984.

Decided: Sept. 17, 1984.

Eugene H. Bayard, Wilson, Halbrook & Bayard, Georgetown, for defendants, appellants.

Wilmer C. Bettinger, Schmittinger & Rodriguez, P.A., Wilmington, for plaintiff, appellee.

Before HORSEY, MOORE and CHRISTIE, JJ.

CHRISTIE, Justice:

This is an appeal from an order granting, by way of summary judgment, a foreclosure on a mortgage which binds 8.2 acres of land located in Lewes and Rehoboth Hundred, Sussex County. Plaintiff-appellee, Jane F. Sayers, is the personal representative of the estate of the mortgagee, Frank P. Gedling, Jr., who died on August 20, 1981. Appellee filed a *scire facias sur* mortgage complaint in Superior Court on April 22, 1982. Defendants-appellants, Allen J.H. Quillen and Dorothy L. Quillen, are the mortgagors. In their answer to the complaint they asserted the defenses of payment and/or setoff. Their defenses applied to both the interest payments and the principal alleged to be due.

After limited discovery, appellee filed a motion for summary judgment. By letter opinion dated August 2, 1983, the Superior Court granted summary judgment in favor of appellee, and this appeal followed. The case was remanded to Superior Court for clarification of its rulings, and Superior Court issued a supplemental opinion letter on February 10, 1984.

Many of the facts are undisputed. On September 30, 1969, the Quillens purchased 8.2 acres in Lewes and Rehoboth Hundred from Frank P. Gedling, Jr., for $12,300. The purchase was financed through a purchase money bond and mortgage which

was executed and delivered to Mr. Gedling on the same date. Under the terms of the mortgage and bond, the Quillens were to pay Mr. Gedling the principal in equal annual installments over a 12-year period, and interest on the unpaid principal was to be paid in quarterly installments. The first payments were to be made on October 1, 1970. It is admitted that the Quillens made some payments in cash but after a short time they ceased to make cash payments as called for by the payment schedule, and Mr. Gedling did not require them to do so.

The Quillens contend that the terms of payment were subsequently orally modified by Mr. Gedling and the Quillens so as to provide that Mr. Gedling would receive interest only on the principal of the mortgage during his lifetime and that the unpaid principal would be forgiven before Mr. Gedling's death or by his last will and testament. The Quillens also say that interest was to be paid by the Quillens in the form of services, i.e., cutting and baling of hay, preparation and serving meals, etc. However, there is no writing to support these contended changes in the agreement, and there is no writing to indicate that Mr. Gedling forgave the principal.

Ledger entries maintained by Allen Quillen describe a record of payment to Mr. Gedling in the form of cash and later in the form of labor performed. Payment of interest in cash continued only until October, 1974, and thereafter, according to the Quillens' records, payment of interest was made by the Quillens by baling hay harvested by Mr. Quillen from other property of Mr. Gedling.

The depositions of the Quillens indicate that there was a close relationship between them and Mr. Gedling. He was their next-door neighbor, and he regularly ate meals at their home. The Quillens also made available to Mr. Gedling, for a period of 14 years, the free use of an automobile. The Quillens paid for the insurance and maintenance on that automobile. As Mr. Gedling became older he was cared for primarily by the Quillens.

The Quillens failed to present their claims to the estate, and they made no claim even after demand for payment of their mortgage indebtedness was sent to them by the attorney representing the estate. In fact, the Quillens' prior attorney never did present a claim to the estate or to the Register of Wills on their behalf.

Superior Court granted summary judgment for the estate on the bases that: (1) The Quillens' allegation of payment amounted to a claim against the estate (not a defense against claims by the estate), and it was barred by the non-claim statute, 12 Del.C. Ch. 21; (2) The Quillens' claims of payments on an oral agreement are barred by the statute of frauds. 6 Del.C. § 2714(a).

On appeal, the Quillens renew their contention that they are entitled to a credit for the value of their personal services, which they say they rendered to Mr. Gedling and which he accepted in lieu of cash. The Quillens insist that the Superior Court erred when it failed to conduct a hearing on the value of their services. We agree that the legal issues raised in Superior Court do not necessarily preclude the Quillens from asserting a right to credit for services Mr. Gedling accepted in lieu of cash payments. We find that there are triable issues of fact as to mortgagors' right to such credit insofar as they apply to interest payments. We hold that it was error for Superior Court to grant summary judgment as to the issue of interest alleged to be due on the mortgage principal.

The Quillens claim that their oral agreement with Mr. Gedling, early in the mortgage relationship, established that interest payments were to be made by the Quillens in the form of services, such as the cutting and baling of hay. They also claim that they are entitled to a hearing to determine what balance, if any, is owed on the principal of the mortgage. According to their contentions, the effect of the oral agreement and of their services was that they paid the interest due by their labors, and if their assertions are found to be supported

by a preponderance of the evidence, then the most which would remain due and owing is that portion of the mortgage principal not previously paid off in cash. These contentions, however, fail to address the interest payments which may be found to be due for time which has passed since Mr. Gedling's death.

■ The Quillens also claim that Mr. Gedling accepted their services in lieu of payments toward the principal of the debt and that they are entitled a hearing on the issue of the value of that payment which is to be credited toward the principal. We find, however, that the evidence presented by the Quillens fails to indicate the existence of such a clear and binding agreement (as to principal) between Mr. Gedling and the Quillens, which would justify a holding that any services rendered after such agreement were actually accepted as part performance of a contractual obligation. Under the circumstances, we hold that any understanding as to principal which the parties may have had is barred by 6 *Del.C.* § 2715, and the Quillens can now assert no claim for credit toward the principal.

Mr. Gedling's estate contends that the Quillens' remaining claim for credit on account of their personal services to Mr. Gedling, is barred by the Statute of Frauds, 6 *Del.C.* §§ 2714(a), 2715. The estate further asserts that if the Quillens have any claim at all for their services, it is at best an unliquidated claim against Mr. Gedling's estate and is barred by the "non-claim" statute, 12 *Del.C.* § 2102(a), which sets forth a time limitation of six months from the date of the granting of letters to the executor or administrator for bringing claims of this nature.

I

The Statute of Frauds, as it may apply to the facts of this case, is embodied in 6 *Del.C.* §§ 2714(a) and 2715. These sections provide in pertinent part:

6 *Del.C.* § 2714(a)

No action shall be brought to charge any person upon any agreement made upon consideration of ... any contract or sale of lands ... or any interest in or concerning them ... unless the contract is reduced to writing, or some memorandum, or notes thereof, are signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing....

6 *Del.C.* § 2715

No action shall be brought to charge the personal representatives or heirs of any deceased person upon any agreement to make a will of real or personal property, or to give a legacy or make a devise, unless such agreement is reduced to writing, or some memorandum or note thereof is signed by the person whose personal representatives or heirs are sought to be charged, or some other person lawfully authorized in writing, by the decedent, to sign for him.

■ The purpose of these statutes is, of course, to afford protection against fraud in transactions of the type mentioned in the statute. However, a well settled general exception to the restrictions of the statute of frauds exists when there is evidence of actual part performance of an oral agreement. *Cannon v. Collins,* 3 Del.Ch. 132 (1867); *Shepherd v. Niles,* Del.Ch., 125 A. 669 (1924); *Durand v. Snedeker,* Del. Ch., 177 A.2d 649 (1962). Part performance may be deemed to take a contract out of the provisions of the statute of frauds on the theory that acts of performance, even if incomplete, constitute substantial evidence that a contract actually exists. *Durand v. Snedeker, supra.*

■ We rule that the Superior Court was in error when it ruled, as a matter of law, that the statute of frauds barred the Quillens' claims that an oral agreement, or series of agreements, (under which it is claimed that there has already been substantial performance) modified or superseded the interest payment terms found in the bond and mortgage. It is possible that the

services said to have been provided by the Quillens were accepted as part performance of a modified agreement as to interest, and that the modified agreement or agreements escape the restrictions of the statute of frauds because of such part performance. A hearing at which the Quillens may present proof of such an oral agreement or agreements, coupled with proof of part performance, should be conducted.

## II

■ The Superior Court was also in error when it held that the "non-claim" statute, 12 *Del.C.* § 2102(a), barred the Quillens' claim of payment of interest by services.

The decedent's estate claims that the services performed by the Quillens for the benefit of Mr. Gedling prior to his death entitled them to, at most, assert a claim against the mortgagee's estate for some remuneration for these services (and that such claim is barred by 12 *Del.C.* § 2102(a)). However, we find some evidence which could be construed as indicating that Mr. Gedling accepted personal services in lieu of cash interest payments, and if this is established, the non-claim statute would find no application. *See* 59 C.J.S. *Mortgages* § 448(b).

## III

■ Finally, the estate of the mortgagee attempts to establish that the payments the Quillens say they have made are in essence a "setoff", and the assertion of a setoff is barred under the rules reiterated in *Gordy v. Preform Bldg. Components, Inc.*, Del. Supr., 310 A.2d 893 (1973) which held, in effect, that counterclaims not related to the mortgage transaction may not be asserted in an action of *scire facias sur* mortgage. We find the circumstances in *Gordy* to be distinguishable from those in the case at bar. The *Gordy* case also involved an action of *scire facias sur* mortgage, but the defendant in that case moved for permission to assert a counterclaim against the plaintiffs based on an agreement wherein

the plaintiffs had promised to indemnify defendant against certain unrelated claims which were being litigated in a Pennsylvania court. The indemnity agreement and claims were not part of the mortgage transaction on which plaintiffs' action was based. This Court there stated that:

... [U]nder the Delaware statute which authorized sci. fi. sur mortgage actions, setoff was not a permissible defense, and the counterclaim which defendant seeks to assert would not have been permitted. Thus, setoff was not permitted whether by the statute or by the decisional law relating to sci. fa. actions based upon the record. 310 A.2d at 896.

The Court further noted that the defendant's counterclaim was a permissive one, and that there was nothing in the Superior Court rules that showed an intent to permit a permissive counterclaim in sci. fa. actions. *Id.*

We rule that the case at bar does not involve such a setoff. The Quillens' claim of payment is directly related to and a part of the mortgage transaction. They simply say that they rendered personal services which were accepted as interest payments.

\* \* \*

In summary, we hold that the mortgagors' payment in kind through personal services in lieu of cash payments on interest, if accepted by the deceased as payments in lieu of cash, may be construed to be payments pursuant to an agreement or series of agreements which are not barred by the statute of frauds and that the claim for credit for such payment is not barred by the other statutes or rules referred to herein. We hold that the Quillens' claims are so related to the mortgage transaction that they may be pleaded as a defense in a trial to determine the amount of interest due.

The existence of these triable issues of material fact precluded the granting of summary judgment as to the claim of payment of interest. The ruling of Superior Court is REVERSED insofar as it applied

to interest alleged to be due on the unpaid principal of the mortgage and the case is REMANDED for trial on that issue. In all other respects the rulings of Superior Court are affirmed.