Lucia M. SHEPHERD, Executrix of the Estate of Adolfo Mazzetti, deceased, Defendant Below, Appellant,

v.

Remo MAZZETTI, Plaintiff Below, Appellee.

Remo MAZZETTI, Plaintiff Below, Appellant,

v.

Lucia M. SHEPHERD and Lucia M. Shepherd, Executrix of the Estate of Adolfo Mazzetti deceased, Defendant Below, Appellee.

Supreme Court of Delaware.

Submitted: May 17, 1988.
Decided: July 7, 1988.

Charles Gruver, III, of Bayard, Handelman & Murdoch, P.A., Wilmington, for appellant.

John H. Benge, Jr., of Allmond, Eastburn & Benge, Wilmington, for appellee.

Before CHRISTIE, C.J., and HORSEY, and HOLLAND, JJ.

PER CURIAM:

These are consolidated appeals from a decision of the court of Chancery granting specific performance postmortem of an oral promise of Adolfo Mazzetti ("father") to convey real estate to Remo Mazzetti ("son") for consideration, notwithstanding a contrary disposition by the father's Will. Defendant-below, Lucia M. Shepherd ("daughter"), individually and as Executrix of her father's Estate, appeals from the Chancellor's ruling requiring daughter to administer her father's Will as though decedent had devised the family home to his son (plaintiff-below) rather than to her, as his Will provided. The son cross-appeals from the Court's grant of his sister's claim for recovery of her attorney fees from the Estate.

The appeal and cross-appeal are taken from various rulings of the Trial Court upon son's consolidated suits for specific performance and the daughter's counter-claims, charging her brother with breaches of fiduciary duty to their father and to the family corporation, a construction company, through mismanagement and waste of corporate assets. In a series of pre-trial rulings, the Chancellor granted the son's motion to dismiss the daughter's counter-claims and denied the daughter's motion for summary judgment based upon the statute of frauds relating to testamentary dispositions. 6 *Del.C.* § 2715. The Court read into section 2715 the part-performance judicial exception which our court of equity has, upon a showing of clear and convincing evidence, traditionally read into 6 *Del. C.* § 2714(a),[1] the statute of frauds control-

ling contracts generally. Following trial, the Chancellor granted the son's petition for specific performance, finding the son to have established by clear and convincing evidence the existence of an oral contract with his father and part performance by the son. However, the Court granted daughter's petition that the Estate be assessed with her reasonable attorney fees and costs incurred in the defense of the Will, found to include her counter-claims.

The daughter's appeal raises two issues: (i) whether the Court erred as a matter of law in declining to rule that an action for specific performance based upon a decedent's oral promise to devise real property is absolutely barred by 6 *Del.C.* § 2715; and (ii) if not, whether the Court's grant of specific performance was either erroneous as a matter of law or not supported by clear and convincing evidence of record. The son's cross-appeal raises one issue, whether the Court abused its discretion in assessing against the Estate daughter's attorney fees and expenses incurred in pursuit of her counter-claims that were dismissed for lack of merit.

We affirm the Chancellor's rulings on all issues appealed. We conclude that the Court did not err as a matter of law in declining to construe 6 *Del.C.* § 2715 as imposing an absolute bar against an action for specific performance based upon a decedent's oral promise to devise real property. We hold that the Court properly read into 6 *Del.C.* § 2715 the part performance exception, which our court of equity has, upon a showing of clear and convincing evidence, read into 6 *Del.C.* § 2714(a). We further hold that the Court did not commit factual or legal error or abuse its discretion

---

1. 6 *Del.C.* § 2714(a) provides:

   **§ 2714. Necessity of writing for contracts; definition of writing; evidence.**

   (a) No action shall be brought to charge any person upon any agreement made upon consideration of marriage, or upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them, or upon any agreement that is not to be performed within the space of one year from the making thereof, or to charge any person to answer for the debt, default, or miscarriage, of another, in any sum of the value of $25 and upwards, unless the contract is reduced to writing, or some memorandum, or notes thereof, are signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing; except for goods, wares and merchandise, sold and delivered, and other matters which are properly chargeable in an account, in which case the oath or affirmation of the plaintiff, together with a book regularly and fairly kept, shall be allowed to be given in evidence in order to charge the defendant with the sums therein contained.

in its remaining rulings, which are the subject of the appeal and the cross-appeal.

## I

The statute of frauds applicable to testamentary transfers of property (real or personal) found in 6 *Del.C.* § 2715 provides:

> No action shall be brought to charge the personal representatives or heirs of any deceased person upon any agreement to make a will of real or personal property, or to give a legacy or make a devise, unless such agreement is reduced to writing, or some memorandum or note thereof is signed by the person whose personal representatives or heirs are sought to be charged, or some other person lawfully authorized in writing, by the decedent, to sign for him. This section shall not apply to any agreement made prior to May 1, 1933.

Thus, a written will executed with the formalities of 12 *Del.C.* §§ 201–203 is a document of great dignity and not to be deviated from lightly. However, in law there are few absolutes without exceptions, and the statute of frauds is but one example. ■ One well-rooted exception to the absolute command of the general statute of frauds controlling contracts, *see* 6 *Del.C.* § 2714(a), is the equitably-derived principle that a partly performed oral contract may be enforced by an order for specific performance upon proof by clear and convincing evidence of actual part performance. *See Quillen v. Sayers,* Del.Supr., 482 A.2d 744, 747 (1984); *see also Equitable Trust Co. v. Hollingsworth,* Del.Supr., 49 A.2d 325, 327–28 (1946) (although the oral promise at issue occurred in 1926, seven years prior to the effective date of section 2715, the rationale adopted by this Court for applying equitable principles to enforce an oral contract must apply as well to post–1933 agreements). Thus, a court of equity may decree specific performance of an oral land contract, notwithstanding section 2714, when there is evidence of actual part performance of the oral contract. *See Shepherd v. Niles,* Del.Ch., 125 A. 669, 670 (1924). The exception is applied to prevent the statute from working an injustice. ■

*See, e.g., Hamilton v. Traub,* Del.Ch., 51 A.2d 581, 583–84 (1947). This exception is firmly established under section 2714(a), *see, e.g., Durand v. Snedeker,* Del.Ch., 177 A.2d 649, 651–52 (1962), and the *raison d'être* for the section 2714(a) exception applies with equal force to section 2715. *See Quillen,* 482 A.2d at 747. Thus, we must affirm the Chancellor's ruling that actual part performance by the son upon his deceased father's oral promise to devise the home property to him obviates the bar of section 2715.

## II

■ There is substantial evidence of record to support the factual findings of the Chancellor. It is clear from the record that the son met his burden of establishing by clear and convincing evidence the existence of an oral promise by the father to devise the family home to his son in return for the son's promise to continue to manage the family business (for the mutual benefit of the father and the son) and to care for the father for the rest of his life. Moreover, the record equally supports the Chancellor's finding that the performance by the son of his duties under the oral contract amounted to legal consideration. Given the fact that the Chancellor's factual findings also appear to be the product of an orderly and logical deductive reasoning process, this Court declines to disturb these rulings. *See Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972).

## III

■ Addressing the question of attorney fees, it is apparent that the Chancellor was correct in holding that

> an executrix that is sued in that capacity by one seeking to take estate property against a valid will is required by her duty to defend the validity of the testator's disposition by will. The fact that the executrix herself is the devisee under the will should not change that result. In either case, what she is defending is the decedent's right to make the testamentary disposition.

*Mazzetti v. Shepherd,* Del.Ch., C.A. No. 8198, Allen, C. (Aug. 11, 1987) at 4 [available on WESTLAW, 1987 WL 15551]. Although, as a general rule, equity will grant "ordinary court costs" to the prevailing party in every case "as is agreeable to equity," 10 *Del.C.* § 5106, and "ordinary court costs" do not usually include a party's counsel fees, *see Walsh v. Hotel Corp. of America,* Del.Supr., 231 A.2d 458, 462 (1967), the grant or denial of counsel fees lies within the sound discretion of the Chancellor. *See Chrysler Corp. v. Dann,* Del.Supr., 223 A.2d 384, 386 (1966). "Consequently, the ruling of the Court [of Chancery] will be overturned only if it is arbitrary and capricious." *CM & M Group, Inc. v. Carroll,* Del.Supr., 453 A.2d 788, 795 (1982). Thus, we find that the Chancellor did not abuse his discretion in awarding to the daughter the reasonable attorney fees incurred by her in fulfilling the obligations associated with her role as executrix.

\*     \*     \*

The judgment of the Court of Chancery is accordingly Affirmed.