

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-1994

# Lindsey v. M. A. Zeccola & Sons, Inc.

Precedential or Non-Precedential:

Docket 93-7426

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Lindsey v. M. A. Zeccola & Sons, Inc." (1994). *1994 Decisions.* Paper 43.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/43

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 93-7426
_____


SUSAN R. LINDSEY,
                    Appellant

v.

M.A. ZECCOLA & SONS, INCORPORATED,
a Delaware corporation; M.A. ZECCOLA,
                    Appellees

_____


Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 90-00283)

_____


Argued:  February 17, 1994

PRESENT:  BECKER, HUTCHINSON and COWEN, <u>Circuit Judges</u>

(Opinion Filed June 9, 1994)


_____


Marc P. Niedzielski, Esquire          (Argued)
Donald J. Detweiler, Esquire
White & Williams
Suite 1202
Three Christina Centre
201 North Walnut Street
Wilmington, DE     19801
          Attorney for Appellant

David A. Roeberg, Esquire             (Argued)
Roeberg & Associates
Twelfth & French Streets
P.O. Box 712
Wilmington, DE     19899
          Attorney for Appellees

_____

OPINION OF THE COURT
_____

HUTCHINSON, <u>Circuit Judge</u>.


In this diversity case appellant Susan R. Lindsey ("Lindsey"), a licensed real estate agent, appeals an order of the United States District Court for the District of Delaware granting summary judgment in favor of her former employer, appellees M. A. Zeccola & Sons, Inc. and Michael A. Zeccola (collectively and individually "Zeccola"). She asserts the district court erred in concluding the statute of frauds barred her claim for breach of an eighteen month employment contract. Lindsey also asserts the court erred in concluding the one year statute of limitations barred her claim for a sales commission. She contends a three year statute of limitations which would not bar her claim applies.

We hold the district court correctly concluded Delaware's statute of frauds barred Lindsey's breach of contract claim and we will affirm that part of its order. We agree with Lindsey, however, that the district court should have applied the three year statute of limitations to her commission claim. We will therefore reverse the part of the district court's order granting summary judgment to Zeccola on Lindsey's claim for a sales commission.[0]

_____

[0] Lindsey also argues the district court erred in dismissing her claims for wrongful discharge and intentional infliction of emotional distress. We hold Lindsey's arguments concerning these

3

I.   Statement of Facts and Procedural History

The facts, viewed in the light most favorable to Lindsey, follow.  In 1989, Zeccola sought to hire a person to sell homes at its development in Hampton Pointe, Delaware ("Hampton Pointe").  At the time, Lindsey worked for another broker on a straight commission basis but was looking for a position which would provide her with a steadier income.

Lindsey and Michael Zeccola first met at Zeccola's home in November of 1989.  They next met at Zeccola's Hampton Pointe office on November 29, 1989 and discussed benefits, salary and commission.  Lindsey informed Zeccola she was not willing to work weekends and Zeccola responded he did not expect her to do so.  Zeccola handed Lindsey a typed document containing the terms of proposed employment.  The document proposed alternative terms of a weekly salary plus commission, or a straight commission with weekly draws against commission.  Lindsey told Zeccola neither proposal was acceptable.

Lindsey and Zeccola met again on December 4, 1989 at the Hampton Pointe office.  Zeccola handed Lindsey a one-page, handwritten proposal headed "calculated on 18 month's,"[0] containing the word "Susan," Lindsey's telephone number and the date "1/24/90" across the top.  Appendix ("App.") at 2.  Below

_____

claims lack merit.  Therefore, we will affirm the district court's order dismissing them.

[0]The apostrophe noting the possessive case in the heading is a grammatical error unless it was meant to limit a missing term such as "salary."  As we conclude _infra_ in Part III, it is ambiguous in either case.

4

this information were two columns, each describing a different pay option. Lindsey testified at her deposition that Zeccola, when he presented the proposal to her, said "this is a contract for 18 months, and this is what I am willing to pay you [left column]. This [right column] is what you wanted, and this [left column] is what I am willing to pay." Lindsey v. M. A. Zeccola & Sons, Inc., No. 92-283-SLR, slip op. at 2 (D. Del. May 24, 1993). Lindsey testified she responded that she "accepted that contract [the left column] for 18 months of employment at that salary and those terms." Id. Neither Lindsey nor Zeccola signed the proposal. Lindsey also says they discussed weekend work and Zeccola understood that she was not going to work every weekend because "our original plan was that I was to have off every other weekend." Id. at 3.

Lindsey began working for Zeccola on February 2, 1990. Lindsey testified her hours were Monday through Thursday 1:00 p.m. to 5:00 p.m., with Fridays off and work on weekends from either 11:00 a.m. or 12:00 noon to either 4:00 p.m. or 5:00 p.m. Lindsey claims she procured buyers for a home in Hampton Pointe. On May 3, 1990 the buyers, Rakesh K. and Beeny Gupta (collectively the "Guptas") signed a sales contract, conditioned on their ability to obtain certain financing arrangements. Zeccola fired Lindsey on May 17, 1990, allegedly because Lindsey did not work in April on either Easter weekend or the weekend thereafter. On November 28, 1990, Zeccola and the Guptas held a settlement meeting and the Hampton Pointe sale was closed. Lindsey received no commission.

5

On May 12, 1992 Lindsey, a Pennsylvania resident, filed suit against Zeccola, a Delaware resident, claiming damages in excess of $50,000 for breach of contract, wrongful discharge and emotional distress. Zeccola denied the existence of any employment contract beyond one for employment at-will and moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or for summary judgment pursuant to Federal Rule of Civil Procedure 56. The district court granted Zeccola's motion for summary judgment as to all claims on May 24, 1993. Lindsey filed a timely notice of appeal on June 17, 1993.

II.   Statement of Jurisdiction and Standard of Review

The district court had subject matter jurisdiction over this diversity case pursuant to 28 U.S.C.A. § 1332 (West 1993). We have appellate jurisdiction over the district court's final order pursuant to 28 U.S.C.A. § 1291 (West 1993). We apply the substantive law of the forum state, Delaware.[0] Clark v. Modern Group Ltd., 9 F.3d 321, 326 (3d Cir. 1993).

When reviewing an order granting summary judgment we exercise plenary review and apply the same principles the district court should have initially applied. Under Federal Rule of Civil Procedure 56(c), we ask whether there are any genuine issues of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). We view

---

[0]Neither party argues that choice of law principles indicate any law other than that of the forum should apply.

6

the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.  Id.  The evidence, however, must be sufficient for a jury to return a verdict in favor of the nonmoving party; if it is merely colorable or not significantly probative, the court should grant summary judgment. Id.


### III.  The Statute of Frauds Issue

Lindsey argues that the district court erred in concluding her breach of contract claim was barred by Delaware's statute of frauds.  It provides:

> **§ 2714.  Necessity of writing for contracts; definition of writing; evidence.**
>
> (a)  No action shall be brought to charge any person upon any agreement . . . that is not to be performed within the space of one year from the making thereof . . . unless the contract is reduced to writing, or some memorandum, or notes thereof, are signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing . . . .

Del. Code Ann. tit. 6, § 2714(a) (1993).[0]

Lindsey argues the statute is satisfied by five written documents when they are considered together with the parties' testimony and other evidence and that her part performance brings this eighteen month contract within the part performance

---

[0]The statute of frauds applies to employment contracts which "cannot possibly be performed within one year."  Kirschling v. Lake Forest Sch. Dist., 687 F. Supp. 927, 930 (D. Del. 1988) (citation omitted).  Lindsey alleges her contract was for eighteen months.

7

exception to the statute. The five documents include the two written proposals; Lindsey's federal employment eligibility verification form; a document containing copies of Lindsey's pay stubs and canceled pay checks; and a document containing copies of canceled checks drawn on Zeccola's account for health insurance reimbursements that were signed by him and made payable to Lindsey.

In Delaware a collection of several writings, only one of which is signed, may satisfy the Delaware statute of frauds. Abramson v. Delrose, Inc., 132 F. Supp. 440, 442 (D. Del. 1955). In determining whether any particular writing or writings satisfy the statute, Delaware relies on section 131 of the Restatement (Second) of Contracts which requires that at least one of the writings be signed by the party to be charged and that all the writings taken together:

> (a) reasonably identif[y] the subject matter of the contract,
>
> (b) [are] sufficient to indicate that a contract with respect thereto has been made between the parties or offered by the signer to the other party, and
>
> (c) state[] with reasonable certainty the essential terms of the unperformed promises in the contract.

Restatement (Second) of Contracts § 131 (1981); see Kirschling v. Lake Forest Sch. Dist., 687 F. Supp. 927, 931 (D. Del. 1988).

It is undisputed that Zeccola's signature appears on some of the five documents. The dispute is over the other three requirements of Restatement section 131. After the district

8

court reviewed all the documents, it held that none of them, singly or together, sufficiently identified the subject matter, duration, job description or hours of employment with the precision needed to satisfy the statute:

> Plaintiff's first unsigned document . . . contains two different salary proposals. Since plaintiff did not accept either of these proposals, it cannot be considered as identifying the subject matter of the contract. Plaintiff's second unsigned document . . . also sets forth two salary proposals. Although plaintiff eventually accepted one of the two proposals on this page, the document standing alone is deficient since 1) defendant did not sign it and 2) it fails to set forth any specific terms of employment. Moreover, the notation "calculated on 18 month's" does not conclusively demonstrate an offer for an 18-month contract.
>
> Plaintiff's employment verification form . . . payroll records . . . and canceled checks for health insurance . . . all fail to provide job description, hours or other terms of employment. Moreover, none of these three documents contain any internal or direct connection with each other or with the first two documents.

Lindsey, slip op. at 7.

Lindsey argues that the district court erred in making these determinations. She relies heavily on section 132 of the Restatement. It states "[t]he memorandum may consist of several writings if one of the writings is signed and the writings in the circumstances clearly indicate that they relate to the same transaction." Restatement (Second) of Contracts § 132 (1981). Lindsey stresses illustration five. It states:

9

> A agrees orally to employ B for two years. An
> unsigned memorandum of the contract, stating
> its terms, is prepared at A's direction.
> Later B begins work and payroll cards are
> made and initialed by A which state some of
> the terms but not the duration of the
> employment.  If it is clear that the unsigned
> memorandum and the payroll cards refer to the
> same agreement, they may be read together as
> a sufficient memorandum to charge A.

Id. at § 132 cmt. c, illus. 5.  This illustration is drawn from

Crabtree v. Elizabeth Arden Sales Corp., 110 N.E.2d 551 (N.Y.

1952).  Id. at § 132 reporter's note.  In Crabtree the documents

at issue included two payroll cards signed by the defendant's

agents.  They contained the parties' names, plaintiff's position

and his salary.  Crabtree, 110 N.E.2d at 553.  Significantly, the

second payroll card, prepared by defendant's comptroller at

plaintiff's insistence that the original agreement entitled him

to a pay raise, noted "'Salary increase per contractual

arrangements with [the defendant.]'"  Id. at 555.  The court

found this statement "certainly constitutes a reference of sorts

to a more comprehensive 'arrangement . . . .'"  Id. at 555.  It

therefore considered parol evidence to show defendant's consent

to the terms of the unsigned office memorandum.  Id.  Reasoning

that a sufficient connection between writings is established by a

clear reference in them to the same subject matter or

transaction, the court found all three documents at issue

"refer[red] on their face to the same transaction" because all of

the information contained in the office memorandum was entirely

consistent with the detailed information in the payroll cards, so

10

that "it is hardly possible that such detailed information could refer to another or a different agreement." Id. at 554–55.

In Crabtree the term of employment at issue was the length of the contract. Id. at 555. The court decided the unsigned memorandum's notation "two years to make good" designated the term of employment. Id. The court concluded this notation could not be given meaning unless it was read as a reference to the duration of employment. To the extent the statement was ambiguous, the New York court concluded that it could consider parol evidence to interpret its meaning. Id. The Crabtree court reasoned "[w]hat purpose, other than to denote the length of the contract term, such a notation could have, is hard to imagine." Id. Unless the notation were meaningless, the court had to relate it to the length of the employment contract. Id. After considering the wage scale, the plaintiff's periodic pay increases, the parties' relationship, the course of negotiations and the plaintiff's insistence upon employment security, the court found "the purpose of the phrase . . . was to grant plaintiff the tenure he desired." Id.

We, like the district court, believe that Crabtree is distinguishable. In Crabtree each of the two signed payroll cards contained all but one of the essential terms of the employment contract and the terms embodied in the payroll cards exactly matched the terms in the unsigned office memorandum.[0] We do not have such specific and unequivocal evidence here. The

[0] This is also true of the facts in illustration five to section 132 of the Restatement.

11

signed documents we have are a Department of Justice Employment Eligibility Form I-9 ("Form I-9"), canceled payroll checks and canceled health insurance reimbursement checks. They do not describe Lindsey's job or her work hours, and none of them "clearly indicate that they relate to the same transaction." Restatement (Second) of Contracts § 132. Form I-9 is dated February 6, 1990 and is signed by Lindsey and Robert Cook, Zeccola's bookkeeper. It provides no employment terms but simply verifies Lindsey's eligibility to work in the United States. It contains no reference to any of the other documents and does not even show that Lindsey was employed by Zeccola.

The weekly payroll checks starting February 8, 1990 and ending May 17, 1990 are signed by Michael or Lawrence Zeccola and show Lindsey received a net pay of $481.84 per week. The corresponding pay stubs show a weekly gross pay of $647.00. Lindsey's weekly gross or net pay, multiplied by the seventy-eight weeks that make up an eighteen month term, does not match any of the three salary figures Zeccola offered her in the two written proposals.[0] The pay checks and stubs show that Lindsey worked for Zeccola from February to May 1990 but they do not show her position, hours or term of employment.[0]

---

[0] The documents at issue purportedly offer salaries of $31,200.00, $50,400.00 and $52,500.00. Lindsey's weekly net pay of $481.84 multiplied by seventy-eight weeks equals $37,583.52. Her gross pay of $647.00 multiplied by seventy-eight weeks equals $50,466.00. While some of the numbers are close, neither Lindsey's gross pay nor her net weekly pay match any of the proposed salaries Zeccola offered her.

[0] One of the pay stubs appears to show the number "40.00" under the area marked "Date." This number could relate to forty hours per week, but the reproduction is poor and we are unable to tell

12

The two checks Michael Zeccola made payable to Lindsey to reimburse health insurance premiums which Lindsey had advanced pose the same problem as the payroll checks. Lindsey says they show the parties' performance was in accord with the provision for health insurance in the second written proposal Zeccola offered her, but the amounts of these checks, $886.40 and $289.26, are not shown to have any relation to the $9,000.00 figure opposite the notation "insurance." App. at 2. Neither the checks nor the insurance premium notices show Lindsey's position, hours, salary or duration of employment.

Accordingly, Lindsey's argument that these checks, read together with the two written proposals, disclose all the essential terms of her contract fails. They do not show Lindsey had a position whose hours, fringes, or salary coincided with any of Zeccola's offers. They do not help us tell which of the three proposals memorializes the essential terms of the employment contract the parties finally agreed upon.

Lindsey argues, however, that the only real dispute in this case concerns the length of the employment contract and that the eighteen month term is evidenced in writing by the statement "calculated on 18 month's" which heads both columns of the second proposal. App. at 2. Unless this statement clearly and explicitly identifies the length of employment as eighteen months, Delaware's presumption in favor of employment at-will

what the "40.00" represents. This notation on the stubs does not correspond to her testimony that she worked approximately 34-36 hours per week. Even if it could be interpreted to indicate her hours per week, our conclusion would not be changed.

13

comes into play to defeat Lindsey's claim. "Delaware Courts will not hold an employment relationship to be anything but at-will absent clear and explicit terms providing otherwise." Mann v. Cargill Poultry, Inc., No. 88C-AU37, 1990 Del. Super. LEXIS 225, at *22 (June 13, 1990), aff'd, 584 A.2d 1228 (Del. 1990); see Merrill v. Crothall-American, Inc., 606 A.2d 96, 102 (Del. 1992) ("[Delaware] law provides a heavy presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature, with duration indefinite.") (citation omitted).

With this presumption in mind, we consider the statement "calculated on 18 month's." We note it is underlined and appears near the top of the page; directly beneath it are two columns, one beginning "salary (2,800 per mo) 50,400" and the other beginning "Susan," and underneath that "(2,916 per mo) 52,500." App. at 2. Zeccola asserts that the statement merely explains how the calculations of earnings were done. Lindsey admitted that the eighteen month period involved in the calculations was based on the time the parties estimated that it would take to sell-out the Hampton Pointe project. We believe the calculations could likewise imply either that the contract was for eighteen months, as Lindsey argues, or, as Zeccola contends, that the parties were using the time it ultimately would take to sell out the Hampton Pointe project in order to predict total wages during a sell-out phase whose future duration was not fixed or known. Zeccola's interpretation of the proposal as no more than a calculation based on the estimated period of the sell-out phase is supported by the proposal's estimate that

14

Lindsey would also earn commissions from the sale of "18 homes." Id. At best, the statement "calculated on 18 month's" could mean either that the salary was calculated based on an estimated, but yet unknown, eighteen month sell-out phase or that it is an offer of employment for eighteen months.[0] Thus, it is ambiguous and we believe such ambiguity in the written description of the parties' agreement on a term is fatal to Lindsey's case because of Delaware's "heavy presumption" in favor of employment at-will.

To establish an agreed upon eighteen month term of employment, Lindsey is wholly dependent on an ambiguous written statement whose interpretation is in turn dependent on the resolution of a conflict in oral testimony. In Delaware all the provisions of an employment contract must be clearly expressed in writing to create an employment agreement that is not one for employment at-will. Crabtree was decided under New York law and it is not controlling because Delaware's general adherence to Restatement principles is modified by a strong presumption in favor of employment at-will which affects Lindsey's case. We do not believe the notation "calculated on 18 month's" refers to the length of Lindsey's employment with the clarity we believe is needed to avoid Delaware's presumption in favor of construing employment contracts as contracts for employment at-will.

Lindsey also argues that partial performance of her contract with Zeccola brings it within the statute of frauds'

---

[0]There is no evidence suggesting that Lindsey would continue to be employed by Zeccola after all the Hampton Pointe homes were sold.

exception for contracts evidenced by part performance. In rejecting Lindsey's part performance argument the district court distinguished Quillen v. Sayers, 482 A.2d 744 (Del. 1984). Lindsey argues that the district court erred in drawing that distinction. In Quillen the Delaware Supreme Court recognized "a well settled general exception to . . . the statute of frauds [which] exists when there is evidence of actual part performance of an oral agreement" and applied the exception to an oral agreement concerning a mortgage foreclosure. Id. at 747 (citations omitted). The district court distinguished Quillen because Quillen enforced an oral agreement between a buyer and seller of land. It concluded that the statute of frauds' exception for part performance of contracts does not extend to employment contracts. Lindsey, slip op. at 9 (citing Hull v. Brandywine Fibre Prods. Co., 121 F. Supp. 108, 114 (D. Del. 1954)) ("It is . . . uncontroverted that partial performance of services under an oral contract not to be performed within a year does not remove the contract from the operation of the Statute of Frauds so as to affect the portion of services not performed.").

In Hull the plaintiff alleged his former employer breached an oral employment agreement for a five year term by terminating plaintiff after three years. Plaintiff argued the statute of frauds did not apply because plaintiff had partially performed the contract when he worked for three of the five years. Hull, 121 F. Supp. at 114. The argument rejected in Hull illustrates the difficulty of applying the partial performance exception to determine whether an employment contract falls

16

within the statute of frauds.  "'The act relied on as part performance should be such as would not have been done independent of [the] contract or agreement . . . because as you are from the act performed to infer a contract, it must therefore be an act of that description, which will not admit any other inference.'"  Durand v. Snedeker, 177 A.2d 649, 653 (Del. Ch. 1962) (quoting Houston v. Townsend, 1 Del. Ch. 416 (1833), aff'd, 1 Harr. 532 (1835)).  When the duration of an employment contract is not specified in writing, the partial performance exception assumes the fact at issue and allows any employee who claims an oral employment contract for a term in excess of one year to avoid the statute of frauds without written proof of the contract's duration.  This is precisely what the statute of frauds' provision requiring a writing before employment contracts in excess of one year will be enforced is intended to prevent:

> [T]o allow the fact that an employee worked and was paid for part of that year to act as such a bar [to application of the statute of frauds] would make the relevant provision of the statute of frauds totally meaningless. Any contract where the employee had started work and received a paycheck would be protected from the application of the statute. . . .  A check stub or even a signed paycheck indicates nothing except what a particular employee has been paid for a particular period.  It does not act as a contract to pay the employee the same amount for even the next pay period, much less for an entire year. . . .

<u>Lessman v. Universal Spray Applications, Inc.</u>, 690 F. Supp. 679, 681 (N.D. Ill. 1988) (quoting <u>Mapes v. Kalva Corp.</u>, 386 N.E.2d 148 (Ill. App. Ct. 1979)).

Lindsey, in arguing that the district court should not have distinguished <u>Quillen</u>, refers us to other Delaware cases applying the partial performance exception to disputes between buyers and sellers of real estate that do not involve their contracts of sale. She cites <u>Nepa v. Marta</u>, 348 A.2d 182, 185 (Del. 1975). In <u>Nepa</u> the Delaware Supreme Court considered whether a real estate broker was entitled to a sales commission and rejected the defendant's statute of frauds defense by applying the statute's exception for partial performance and alternately relying on a determination that "the terms of any such agreement could be performed within a year." <u>Nepa</u>, 348 A.2d at 185. <u>Nepa</u> concerns contracts to pay a real estate broker a commission. It does not concern Delaware's statute of frauds relating to employment contracts.

Lindsey also relies on <u>John Julian Const. Co. v. Monarch Builders, Inc.</u>, 306 A.2d 29 (Del. Super. Ct. 1973), <u>aff'd on other grounds</u>, 324 A.2d 208 (Del. 1974). It too did not deal with the statute of frauds covering employment contracts. In <u>Monarch</u> a judgment creditor sought payment from stockholders who had succeeded to the assets of a dissolved debtor corporation. The Delaware Superior Court held the statute of frauds did not prevent the plaintiff from seeking payment on the stockholders' oral promise that they would assume the debtor's liabilities, because "it clearly appears that the assumption of liability--if

18

it in fact included the liability to [the plaintiff]--has been partially performed." Id. at 34.

Delaware does not apply the partial performance exception to employment contracts with a fixed duration of over one year. Enforcement of oral service contracts for a specified period exceeding one year is precluded by the statute of frauds, even if it is possible to perform them within one year. See Guyer v. Haveg Corp., 205 A.2d 176, 181 (Del Super. Ct. 1964) (citing Hull), aff'd, 211 A.2d ___ (Del. 1965). Lindsey's argument that her partial performance permits oral proof an eighteen month contract of employment despite the statute of frauds fails.

Moreover, even if the partial performance exception were to apply to oral contracts of employment, Lindsey's argument would still founder against Delaware's already discussed heavy presumption in favor of employment at-will. As we have demonstrated, that presumption requires Lindsey to present clear and convincing evidence of all the essential terms of the eighteen month employment contract she is trying to enforce. See Durand, 177 A.2d at 652. Both state and federal courts applying Delaware law continue to follow Hull and so will we. See, e.g., Behr Salyard & Partners, L.P. v. Leach, 1992 U.S. Dist. LEXIS 9584, *32 (E.D. Pa. July 13, 1992) (no partial performance exception to statute of limitations in case involving purported ten-year contract to form leveraged buyout fund under Hull). We reject Lindsey's arguments and will affirm the part of the

district court's order granting summary judgment against her on her claim that Zeccola breached her employment contract.[0]

---

[0]Lindsey argues Zeccola admitted that a contract existed in depositions and in the course of their negotiations over her employment. She contends these admissions, coupled with the terms of employment shown by the documents she produced, are an adequate substitute for the written memorandum required by the statute of frauds. This argument is made for the first time on appeal. Therefore, we will not address it at this time. Frank v. Colt Indus., Inc., 910 F.2d 90, 100 (3d Cir. 1990). Moreover, Lindsey gives no citations to the record showing the alleged admission(s). Zeccola denies he made them.

Lindsey also claims a sales commission from Zeccola for a home she arranged to sell while working for him.[0]  The district court also entered summary judgment against her on this claim, concluding it was barred by a one year statute of limitations. Lindsey contends the district court should have applied a three year statute of limitations.  We agree with Lindsey.

The relevant three year statute of limitations provides, in relevant part:

> **§ 8106.  Actions subject to 3 year limitation**.
>
> No action . . . based on a promise . . . shall be brought after the expiration of 3 years from the accruing of the cause of such action . . . .

Del. Code Ann. tit. 10, § 8106 (1975).  The relevant one-year statute of limitations provides:

> **§ 8111.  Work, labor or personal services**.
>
> No action for recovery upon a claim for wages, salary, or overtime for work, labor or personal services performed, or for damages (actual, compensatory or punitive, liquidated or otherwise), or for interest or penalties resulting from the failure to pay any such claim, or for any other benefits arising from such work, labor or personal services performed or in connection with any such

---

[0]Although the remaining claim is less than $50,000, the district court retains diversity jurisdiction.  When diversity exists at the time the case is filed, it is not affected by the dismissal of one of the claims even though the amount recoverable on the remaining claim is less than the required $50,000. Nationwide Mut. Fire Ins. Co. v. T & D Cottage Auto Parts & Serv., Inc., 705 F.2d 685, 687 (3d Cir. 1983) (citing Wade v. Rogala, 270 F.2d 280, 285 (3d Cir. 1959)).

action, shall be brought after the expiration
of one year from the accruing of the cause of
action on which such action is based.

Del. Code Ann. tit. 10, § 8111 (1975).

In concluding that the one year statute of limitations applied, the district court stated, "[t]he critical date to focus upon is the date when the work was performed, not the date when plaintiff could be paid." Lindsey, slip op. at 12. The court reasoned Lindsey completed her work on May 3, 1990 when she sold the home and her claim was time-barred under section 8111 because approximately two years had passed before she filed suit. We think the court erred.

The district court relied principally on dicta in Brown v. Colonial Chevrolet Co., 249 A.2d 439, 441 (Del. Super. Ct. 1968):

The one-year statute applies to claims
based on work or services that have been
completed, even though the work may have
originally been undertaken on the strength of
a promise. Since the services have been
completed, the action is based upon the
service performed rather than on the original
promise. The three-year statute applies to
claims based on work or services not yet
completed as to which a promise has been
made. Since the work remains uncompleted, an
action with respect to such work is
necessarily based upon the underlying
promise.

In Brown, however, the Delaware Superior Court held that the three year statute of limitations applied. Brown had sought a promised year-end bonus for work which had not yet been performed

22

because he was terminated before the end of the year. The court reasoned "[t]he suit here is for what would have been earned had the employment continued rather than for something already earned." Id.

In Delaware "the general rule is that a broker may recover a commission only when he is the procuring cause of a consummated transaction." B-H, Inc. v. "Industrial America," Inc., 253 A.2d 209, 213 (Del. 1969); see also Nepa, 348 A.2d at 184. A broker is not entitled to a commission until the sale actually takes place. A.I.C. Ltd. v. Mapco Petroleum Inc., 711 F. Supp. 1230, 1242 (D. Del. 1989), aff'd without opinion, 888 F.2d 1378 (3d Cir. 1989).

Section 8106 applies to actions based on a promise. Zeccola allegedly promised to pay Lindsey a commission for any home that she sold. It was not certain if or when Lindsey would be paid because the May 3, 1990 sale agreement was contingent upon the Guptas' ability to obtain financing. Lindsey was fired before the sale was finalized. Delaware law did not entitle her to a commission until the settlement took place. Her right to payment did not accrue until after her employment was terminated. A real estate broker's duties in connection with a sale do not end with the signing of the sales agreement, but often continue until, and sometimes after, settlement.

We believe Delaware case law supports application of the three year statute of limitations to Lindsey's claim for a commission. In Nepa the Delaware Supreme Court applied the three year statute of limitations to an action for a broker's

23

commission.  _Nepa_, 348 A.2d at 184.  Zeccola's attempt to

distinguish _Nepa_ on the ground that it involved an independent

broker rather than an employee does not persuade us.  Lindsey is

not suing for back wages.  She, like the broker in _Nepa_, is suing

for a commission.  Her receipt of a weekly salary is not

dispositive on the issue of which statute of limitations applies

to her demand that her employer perform its promise to pay her

commission on sales she procured after the sales were later

consummated.  If it were, we would have to treat Lindsey's right

to the commission she was promised as a part of her weekly wage.

We do not think it was.

As the district court recognized in an earlier case,

there may sometimes be an overlap between the two statutes:

> There is seeming overlapping of [sections
> 8106 and 8111] because nearly every claim for
> wages is based upon an underlying promise,
> express or implied, to pay the wages.  The
> two sections have been reconciled by the
> Supreme Court of Delaware in _Goldman v.
> Braunstein's_, 240 A.2d 577 (Del. Supr. 1968).
> There the court distinguished between an
> action for wages for services already
> performed to which section 8111 is relevant,
> and an action based on a contract for its
> breach prior to performance for which section
> 8106 is controlling.  This distinction
> between the coverage of sections 8106 and
> 8111 is clearly explained by Judge Stiftel in
> _Brown v. Colonial Chevrolet_, 249 A.2d 439,
> 441 (Del. Super. 1968).

_Wilmington Housing Auth. v. Rocky Marciano Constr. Co._, 407

F. Supp. 228, 232 (D. Del. 1976).  The Delaware Supreme Court has

concluded that any doubt as to which statute of limitations

24

applies should be resolved in favor of the longer period. Sonne v. Sacks, 314 A.2d 194, 196 (Del. 1973). Thus, we believe Delaware case law also indicates, on the record now before us, that the three year statute should be applied to Lindsey's claim for a commission.

Brown itself is consistent with the Delaware Supreme Court's conclusion that section 8111 applies "to claims arising out of services [already] performed," while section 8106 applies to claims arising or ripening after the employment ended. Goldman v. Braunstein's, Inc., 240 A.2d 577, 578 (Del. 1968) (suit for breach of employment contract for damages for future services subject to three year statute of limitations); see also Advocat v. Nexus Indus., Inc., 497 F. Supp. 328, 334 (D. Del. 1980) (three year statute of limitations applied to action for fraud and negligent misrepresentation regarding alleged promises made by employer for future pension benefits). Applying the three year statute of limitations, the court in Goldman reasoned "any recoverable loss . . . arose upon or after termination of the employer-employee relationship." Goldman, 240 A.2d at 578. Both Goldman and Advocat involved an employer/employee relationship. Nevertheless, because their claims were for promises of future payments, they fell within section 8106 rather than 8111.

Still other cases on future payments consistently hold that section 8106 applies to actions seeking payment for services by a licensed broker, attorney or other independent contractor. Compare Devex Corp. v. General Motors Corp., 579 F. Supp. 690, 702 (D. Del. 1984) (attorneys fees), aff'd without opinion, 746

25

F.2d 1466 (3d Cir. 1984); cf. Nepa, 348 A.2d at 184 (applying three year statute of limitations in action seeking broker's commission) with Sorensen v. The Overland Corp., 142 F. Supp. 354, 360 (D. Del. 1956) (right to indemnity was benefit of employment as officer or director of corporation, therefore one year statute applied), aff'd, 242 F.2d 70 (3d Cir. 1957).[0]

Considering the Delaware Supreme Court's instruction that courts sitting in that state should apply the longest statute of limitations in case of doubt, we think Lindsey's claim, like those of independent contractors who are normally paid after their services are rendered, falls under section 8106 rather than section 8111. Accordingly, we hold Lindsey's commission claim is not time-barred and we will reverse the part of the district court's order granting summary judgment against Lindsey's claim for a sales commission and remand for further proceedings.[0]

---

[0]We are not unmindful of the district court's statement in Aero Serv. Corp. v. E. S. Gordy, 109 A.2d 393, 394 (Del. Super. Ct. 1954) that "[t]he very language of [section 8111] demonstrates that it has reference to the claims of servants, or members of the laboring classes and salaried employees," as opposed to independent contractors whose fees normally do not arise a week at a time but rather when their work is completed. Id. (applying three year statute of limitation to action for payment of services of independent contractor). We do not believe, however, the distinction between a promise to pay an independent contractor for services and a promise to pay an employee a commission in addition to the employee's regularly accruing wages is controlling.

[0]Lindsey also argues section 8111 is tolled because Zeccola actively concealed her entitlement to a commission. This argument is also presented for the first time on appeal. In any event, we need not consider it because of our conclusion that the three year statute of limitation applies and Lindsey's claim for a commission was therefore timely filed.

26

## V.  Conclusion

We will affirm the part of the district court's order that granted summary judgment to Zeccola on Lindsey's claims for breach of an eighteen month employment contract, wrongful discharge and emotional distress.  We will reverse that part of the district court's order granting Zeccola summary judgment on Lindsey's claim for a sales commission and remand the case for further proceedings consistent with this opinion.

Susan R. Lindsey v. M.A. Zeccola & Sons, Incorporated, a Delaware Corporation; M.A. Zeccola

No. 93-7426

BECKER, Circuit Judge, concurring and dissenting.

I join in Part IV of the opinion of the court. However, I dissent from Part III for two reasons. First, I believe that the majority has construed the requirements of Delaware's statute of frauds much too rigorously; a memorandum need not be as complete, precise and detailed as the majority suggests to satisfy the statute. Second, the majority has compounded this error by conflating with the statute of frauds Delaware's strict jurisprudence on employment-at-will unnecessarily raising the barrier to suit even higher.

I agree with appellants that the statute of frauds is fully satisfied here by the contract proposal written in Zeccola's longhand and by the other written documents. All that the statute of frauds requires is that the writings reasonably identify the subject matter of the contract. Restatement Second of Contracts, § 131(a) (1981) (quoted by majority typescript at 7-8). The writing need not set out all the details of the contract; only the "essential terms" of unperformed promises must be stated. Restatement (Second), § 131(c) (quoted by majority, typescript at 7-8). Exhibit "B2," written in Zeccola's own hand, sets out all the unperformed promises of the defendants: an 18-month term of employment, a salary of roughly $647.00 per week,

28

health insurance, and the payment of commissions.[0]  Although Exhibit B2 was not signed by Zeccola, signed payroll cards, as in the Restatement example, see majority typescript at 9, referred to the same agreement as Exhibit B2, evidenced by the fact that they contained essentially the same terms.[0]  Thus, the signatures on the payroll cards apply to Exhibit B2 which contained the essential 18 month term of employment.

In short, the purpose of the statute of frauds is to require objective evidence of a contract in order to prevent and avoid fraud so that parties and witnesses cannot just make up claims out of whole cloth.  See Quillen v. Sayers, 482 A.2d 744, 747 (Del. Supr. 1984).  The statutory purpose was satisfied here. The statute does not require a comprehensive memorial.  The remaining details may be fleshed out (and would have been here) by the testimony and by documents other than those signed by the "party sought to be charged."  Only at that point does Delaware's presumption in favor of employment at will become relevant in evaluating whether, based on all of the evidence, defendant breached the agreement.

---

[0]The law does not require writings on points not in dispute. Restatement (Second), § 131(c).

[0]The differences in pay between the payroll cards and exhibit B2, see majority opinion at 11–12, were so insignificant that they do not cast doubt on the conclusion that the writings referred to the same agreement.

29