JOHN  R.  MAPES,  Plaintiff-Appellee,  *v.*  THE  KALVA  CORPORATION, Defendant-Appellant.

Second District   No. 78-202

Opinion filed February 8, 1979.

Joseph B. Cleary, of Schwartz, Cooper, Kolb & Gaynor, Chartered, of Deerfield, for appellant.

Charles M. May, of May, Decker & Associates, of Waukegan, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

Plaintiff, John R. Mapes, sued defendant Kalva Corporation, alleging breach of an employment contract. The trial court entered judgment on a jury verdict, awarding plaintiff $19,975. Defendant appeals, contending that the trial court made several rulings which improperly excluded the Statute of Frauds from consideration in the case. We agree and, therefore, reverse that part of the judgment that would have been subject to the statute.

Plaintiff filed his original complaint on December 22, 1974, alleging that he and the defendant had entered into an oral agreement on December 28, 1973, concerning plaintiff's employment by defendant through December 31, 1974, and alleging the company had wrongfully discharged him on January 15, 1974. The defendant moved to dismiss the cause on the grounds that enforcement of the alleged oral agreement was barred by the Statute of Frauds (Ill. Rev. Stat. 1973, ch. 59, par. 1). The trial court allowed plaintiff to file a verified amended complaint, which he did on March 31, 1975. The amended complaint alleged in part:

"2. That it was understood and agreed by and between the parties that in addition to a stipulated salary the Plaintiff was to receive as additional compensation a sum equal to five per cent (5%) of the Defendant's profits before taxes and profit sharing; said sum to be paid after the close of the Defendant's fiscal year on October 31, 1973"

and

"3. That during the month of January, 1974 the parties hereto agreed that the Plaintiff's employment would be continued retroactively from November 1, 1973 to October 31, 1974 at an annual salary of $27,500.00, payable monthly; * * *."

There was no express reference in the complaint to any other specific agreement between the parties. This amended complaint is not

vulnerable on its face to a motion to dismiss based on the Statute of Frauds. Defendant filed an answer denying the allegations set forth above.

At trial plaintiff testified that he had met with Mr. Edmund Opler, president of defendant Kalva's parent company, during October, 1972, and that at that time Opler offered plaintiff a new position at a salary and bonus which the two men agreed upon. According to plaintiff, their agreement provided that his salary for fiscal 1973 (November 1, 1972, to October 31, 1973) was to be $25,000. Plaintiff also testified that he and Opler agreed that if the company were to realize a profit of at least $50,000 for fiscal 1973 plaintiff was to receive 5% of profit achieved and a salary increase of $2500 for fiscal 1974 (November 1, 1973, to October 31, 1974). If the company were to achieve a profit of at least $100,000 for fiscal 1974 plaintiff was to receive 5% of such profit achieved and a salary increase of $5000 for fiscal 1975.

Plaintiff assumed his new duties on November 1, 1972, and was paid the agreed $25,000 salary during fiscal 1973. Defendant realized a profit of $133,000 for that year but plaintiff received a bonus of only $2500. Beginning November 1, 1973, plaintiff's paychecks began to reflect an increase of salary to $27,500 per year. In late December 1973 plaintiff was told his salary was being reduced to $12,000 a year as of January 1, 1974. Plaintiff worked at the $12,000 salary until he was fired on March 29, 1974. He was unable to secure other employment until August 1974.

Plaintiff was specifically asked at the trial about any agreements with defendant entered into after November 1972. He answered that he had telephoned Opler in January 1974 to complain of the breach of the alleged 1972 agreement. According to plaintiff, "I said that our agreement was thus and so and he said yes, it was, but that is now changed." This phone conversation is apparently the basis for the paragraph in plaintiff's amended complaint alleging a contract arrived at in January 1974.

The only writings in support of the alleged employment contract introduced by plaintiff were some of his paycheck stubs, and at oral argument plaintiff's attorney admitted that he could not prove the existence of any written contract.

At the close of plaintiff's case in chief, defendant moved to dismiss the case on the basis of the Statute of Frauds. This motion was denied by the trial court. Defendant also moved to amend his answer to include the Statute of Frauds defense. This motion was also denied. The trial court stated that it denied plaintiff's motions because both partial performance by plaintiff and the existence of the check stubs as a writing made the Statute of Frauds inapplicable to the instant case. Defendant then put on its own case, during which Opler admitted meeting with plaintiff during October 1972 to offer him a new position, but denied discussing any

detailed contractual arrangements such as the one described by plaintiff. Opler also denied communicating with plaintiff in January 1974 about the latter's salary. At the close of the trial the trial court again denied defendant's motions with regard to the Statute of Frauds and refused to give defendant's proposed instructions on that statute to the jury. No instruction on the Statute of Frauds was given to the jury. The parties stipulated that if defendant were liable, damages would be $19,975. The jury awarded that amount to the plaintiff. Defendant renewed his motions after the conclusion of the trial and they were again denied.

There are two issues before us. (1) did defendant waive his right to the defense of the Statute of Frauds by not pleading it before the trial, and (2) if it were not waived, does the Statute of Frauds make the alleged employment contract unenforceable?

The Statute of Frauds provides, *inter alia*, that:

> "[N]o action shall be brought * * * upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum of note thereof, shall be in writing, and signed by the party to be charged therewith, * * *." Ill. Rev. Stat. 1975, ch. 59, par. 1.

■■ In arguing that defendant waived the right to rely on the Statute of Frauds as a defense, plaintiff relies on the rule that the Statute of Frauds is waived if not properly pled. (See *e.g., Economy Truck Sales & Service, Inc. v. Granger* (1965), 61 Ill. App. 2d 111, 209 N.E.2d 1.) Although this is a correct statement of the law, proper pleading of an affirmative defense such as the Statute of Frauds is not restricted to an original answer. Section 46 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 46) allows for amendment of the pleadings to conform to the proofs. Subsection 3 of that statute provides that:

> "(3) A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just."

The use of this amending procedure as a means of introducing the Statute of Frauds into a case was upheld by the First District Appellate Court in *Uscian v. Blacconeri* (1975), 35 Ill. App. 3d 80, 340 N.E.2d 618.

■■ We hold that in the instant case defendant did properly plead the Statute of Frauds by his attempt to amend the answer in order to conform the pleadings to the proof. He had no duty to raise the defense before trial because plaintiff's verified complaint alleged facts to which the Statute of Frauds would not apply. Defendant cannot be required to devise some new method of pleading the statute, or to plead in response to something other than the complaint. Because it was not until after plaintiff had put on

his case that defendant was in any position to raise the Statute of Frauds defense, defendant must be allowed to amend his answer at that point.

Plaintiff points out the granting of leave to amend an answer is a power left to the discretion of the trial court and argues that the trial court did not abuse its discretion in this case. Plaintiff contends that it would be unjust to allow the statute to be raised after he has put on his case because he might have proceeded differently with regard to both discovery and trial if faced with the Statute of Frauds defense at the outset of the case. Plaintiff's argument is without merit. To not allow amendment here was an abuse of discretion. Defendant's motion to dismiss plaintiff's original complaint on the basis of the Statute of Frauds gave notice to plaintiff that the statute was a potential defense. At oral argument plaintiff's attorney admitted that he could not say he was surprised when defendant raised the issue during the trial. Plaintiff decided to base his discovery and trial strategy on the assumption that the statute would not become an issue and he must live with the results. To hold otherwise would be to allow wishful thinking to control a case; a plaintiff, by treating a valid Statute of Frauds defense as if it didn't exist, could in fact make it cease to exist. Although plaintiff need not have introduced all his evidence before the issue was raised, he should have been prepared to reopen his case upon the amendment of defendant's answer to rebut this new defense.

If plaintiff had some evidence of a later oral contract or of a written contract and had decided it was not necessary to present it because of defendant's initial failure to plead the Statute of Frauds, we would consider remanding to give plaintiff an opportunity to rebut the defense. This, however, is not the situation. At trial plaintiff was specifically asked about both oral agreements after October 31, 1973, and written evidence of his allegations. All he produced was the alleged conversation had with Opler in January 1974 and the aforementioned check stubs. Clearly, plaintiff did not present additional evidence because he did not have it. We will not remand for plaintiff to gather evidence that may not exist and that he should have tried to obtain prior to the first trial.

Having determined that the trial court should have allowed defendant to raise the Statute of Frauds as an affirmative defense, we now turn to the effect of that defense in the instant case.

In order to find in favor of the plaintiff the jury had to accept at least his version of the October 1972 meeting with Opler. Therefore, for purposes of this opinion, we should do the same. The only actual agreement testified to at trial by plaintiff was made in October 1972. Despite the allegations in the amended complaint, plaintiff's alleged January 1974 conversation with Opler obviously cannot be considered as a contract. Therefore, any contract provisions which could not have been

performed until after early October 1973 fall directly within the scope of the statute and are unenforceable unless there is some reason to not apply the statute.

■■ ■ The trial court's conclusion that partial performance operated as such a bar to the application of the statute is incorrect. Partial performance may act as a bar only in certain cases, of which this is not one. Before an oral promise is taken out of the Statute of Frauds partial performance must be of such character that it is impossible or impractical to place the parties in status quo or restore or compensate the party performing for what he has parted with or the value of his performance so that refusal to complete engagement would be a virtual fraud upon the party. (*Ellison v. Ellison* (1939), 372 Ill. 323, 23 N.E.2d 718.) Normal employment contracts such as the one here do not involve this kind of performance. Moreover, to allow the fact that an employee worked and was paid for part of that year to act as such a bar would make the relevant provision of the Statute of Frauds totally meaningless. Any contract where the employee had started work and received a paycheck would be protected from the application of the statute.

■■ ■ The trial court's conclusion that plaintiff's check stubs were a sufficient writing to take the case out from under the bar of the Statute of Frauds is also incorrect. A memorandum on which it is sought to charge a party to a contract must state the contract with such certainty that its essentials can be shown from the signed writing or by some reference therein to some other writing without recourse to parol proof to supply the admitted elements or connecting links. (*Western Metals Co. v. Hartman Ingot Metal Co.* (1922), 303 Ill. 479, 135 N.E. 744.) A check stub or even a signed paycheck indicates nothing except what a particular employee has been paid for a particular period. It does not act as a contract to pay the employee the same amount for even the next pay period, much less for an entire year.

However, complete performance on the part of one of the parties to the alleged contract will prevent the application of the Statute of Frauds. That executed, as opposed to executory, contracts are never voided by the Statute of Frauds has been the law of this State since *Swanzey v. Moore* (1859), 22 Ill. 63, 74. This is significant because the 1972 agreement described by plaintiff clearly involved two separate one year contracts, each with its own terms, one for fiscal 1973 and one for fiscal 1974. Plaintiff testified that he was promised $25,000 salary plus a certain bonus for the 1973 fiscal year. He worked for that entire year. Defendant does not contend that he has failed to complete some part of his duties for that period. Hence, the contract is no longer executory with regard to plaintiff for the fiscal year 1973.

■■ In *Reiss v. El Bauer Chevrolet Co.* (1968), 96 Ill. App. 2d 266, 238 N.E.2d 619, an action was brought by two automobile salesmen against their employer to recover under oral contracts of employment sums of additional compensation plaintiffs contended due them as a "yearly service bonus." The Fourth District Appellate Court held that "The Statute of Frauds is no defense to an executed contract of employment, particularly where all that remains to be done by the other party is the payment of money." (*Reiss v. El Bauer Chevrolet Co.* (1968), 96 Ill. App. 2d 266, 269, 238 N.E.2d 619, 621.) Plaintiff in the instant case is likewise entitled to the bonus he has already earned, which amounts to 5% of $133,000, less the $2500 he has already received, or $4,150.

■■ Although the jury did not assign separate values to the different parts of plaintiff's claim, we believe it appropriate for us to do so. The amount of damages was stipulated to by the parties, contingent only on the question of liability. But, as has been noted, the jury's determination of that liability was based on critically incomplete instructions as to the law. Indeed, plaintiff's claims based on the contract for the 1974 fiscal year should never even have reached the jury. Since plaintiff's claim, based on the 1973 contract, is easily ascertainable, we see no reason not to compute it.

■■ Plaintiff's other allegations involve the alleged contract for the 1974 fiscal year. He had not completed his performance under this contract prior to defendant's alleged breach. Therefore, plaintiff's claims relating the the 1974 fiscal year are barred by the Statute of Frauds.

For the foregoing reasons, we reverse as to $15,825 of the $19,975 judgment for plaintiff and affirm the remaining $4150 of that judgment.

Affirmed in part, reversed in part.

LINDBERG and NASH, JJ., concur.