The HAMMOND GROUP, LTD., an Illinois Corporation, Plaintiff–Appellant,

v.

SPALDING & EVENFLO COMPANIES, INC., a Delaware Corporation, Defendant–Appellee.

The HAMMOND GROUP, LTD., an Illinois Corporation, Plaintiff–Appellant,

v.

AJAY ENTERPRISES CORPORATION, a Wisconsin Corporation, Defendant–Appellee.

Nos. 93–2091, 93–2221.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1995.

Decided Nov. 8, 1995.

Carol Repasky, Chicago, IL, John A. Ta-tooles (argued), Steven R. Kathe, Tatooles & Associates, Palatine, IL, Edward Kaplan, Edward Kaplan & Associates, Chicago, IL, for Hammond Group, Limited, an Illinois corporation.

Marshall Patner (argued), David I. Hurwitz, Marshall, Patner & Associates, Jeremy W. Hobbs, Krasnow, Sanberg & Cohen, Chicago, IL, for Spalding & Evenflo Companies, Incorporated, a Delaware corporation.

Marshall Patner (argued), David I. Hurwitz, Marshall, Patner & Associates, Jeremy W. Hobbs, Krasnow, Sanberg & Cohen, Chicago, IL, for Ajay Enterprises Corporation, a Wisconsin corporation.

Before CUMMINGS, FLAUM and ROVNER, Circuit Judges.

CUMMINGS, Circuit Judge.

In December 1987 defendant Spalding & Evenflo Companies, Inc. ("Spalding") terminated plaintiff, the Hammond Group, Ltd. ("Hammond"), as a manufacturer's representative for certain Spalding sporting goods. Thereafter, Hammond filed several amended complaints. The second amended corrected complaint alleged seven counts against Spalding. The trial court granted defendant summary judgment on three of the counts: (1) restitution for expenses incurred by Hammond; (2) breach of an implied covenant of

good faith and fair dealing; and (3) tortious interference with a Hammond employee. Plaintiff does not contest the ruling on those counts. In December 1988, Hammond also filed a lawsuit against Ajay Enterprises Corporation ("Ajay"), a licensee for certain Spalding products, on the ground that Ajay breached an oral employment contract with the plaintiff and had failed to pay commissions on sales that were procured by plaintiff and completed after termination of the contract.

In March 1993, a jury trial commenced on the remaining four counts against Spalding. Count I alleged that Spalding had breached an oral employment contract for a term of definite duration. Count II alleged that Spalding failed to pay commissions to Hammond for sales that had been procured but were made after Hammond had been terminated. Count III alleged that Spalding breached a promise to pay Hammond commissions (shortfalls) resulting from a modification of Spalding's commission structure, and Count IV alleged that Spalding's failure to pay "procuring cause" commissions violated the Illinois Sales Representative Act (820 ILCS 120/1).

On March 24, 1993, after the close of plaintiff's case, Judge Nordberg granted Spalding's motion for directed verdict because plaintiff failed to present sufficient evidence for a jury to find in its favor. After the district judge directed a verdict for Spalding, Ajay filed a motion for summary judgment on the ground of issue preclusion. On April 30, 1993, the district judge granted that motion. After Hammond's motion for a new trial in the Spalding case was denied, it filed a timely notice of appeal in both the Spalding and Ajay cases. This Court has jurisdiction to hear those appeals pursuant to 28 U.S.C. § 1291.

## FACTS

Spalding is a Delaware corporation that manufactures and sells sporting goods under the "Spalding" name. Ajay is a Wisconsin corporation and a licensee of Spalding for certain sporting goods. Plaintiff is an Illinois corporation serving as a manufacturer's representative for various companies in the sporting goods and leisure products industry.

In 1982, Spalding and Hammond entered into a written Manufacturer's Representative Agreement under which Hammond would sell Spalding goods in certain Midwest states. Similar written agreements were then entered into in 1983 and 1984, increasing the size of the Hammond territory. Each agreement included the following provision as to the payment of commissions and termination of the agreement:

In the event of termination of this Agreement, SPALDING shall be obligated to pay commissions only with respect to orders which: (1) have been accepted by SPALDING prior to the effective date of termination; (2) which are shipped prior to or within sixty (60) days after the effective date of termination; and (3) otherwise would be payable hereunder.

The written agreements expired by their own terms at the end of each year and contained a provision that they would not be extended unless in writing.

Plaintiff's president, Mr. Hammond, testified that in October 1984 the parties entered into an oral agreement to commence on January 1, 1985 under which plaintiff would continue to serve as a manufacturer's representative for Spalding. According to Mr. Hammond, Spalding vice-president, Jack Lacey, told Hammond that the oral agreements were to continue until plaintiff was informed that it did not have a satisfactory sales performance. In that event, plaintiff would be told that "the following year may be the last year should we not improve our performance." [Tr. v. XV, p. 51]. Hammond testified that apart from a minor change the parties continued to operate under the terms of the previous written agreements.

At a national sales committee meeting in the fall of 1984, Spalding announced it was modifying the terms of its commission structure in order to create incentives for manufacturer's representatives to sell to "smaller dealers and the court sport business." [Supp.App. 104]. Hammond initially agreed to those terms, but a year later complained that the new "tiered" commission structure was flawed. Hammond testified that Spald-

ing's National Sales Manager, William McFeeters, stated that the 1984 commission change was not intended to lead to reduced commissions, but that if it did happen Spalding would find a way to "make it right." [Supp.App. 253]. However, again according to Hammond, Mr. McFeeters did not know how Spalding would correct for any shortfalls.

Effective December 17, 1987, Spalding terminated Hammond as a manufacturer's representative and paid the commissions on all sales of merchandise in Hammond territory that had been ordered by December 17, 1987 and shipped within sixty days thereafter.

## DISCUSSION

■ This Court reviews a Fed.R.Civ.P. 50(a) directed verdict de novo. *Continental Bank N.A. v. Modansky,* 997 F.2d 309, 313 (7th Cir.1993). In doing so, we consider the evidence in the light most favorable to the nonmoving party, and will reverse the judgment only if enough evidence exists that could sustain a verdict in favor of the nonmoving party. *Id.*

I. *Insufficient Evidence That Parties Had An Enforceable Contract for Definite Duration*

■ The district court directed a verdict on Count I because there was insufficient evidence for a reasonable jury to find that the parties had an enforceable oral contract for a definite term. Under Illinois law, "an employment relationship without a fixed duration is terminable at-will by either party." *LaScola v. U.S. Sprint Communications,* 946 F.2d 559, 563 (7th Cir.1991) (quoting *Duldulao v. Saint Mary of Nazareth Hosp. Center,* 115 Ill.2d 482, 106 Ill.Dec. 8, 11, 505 N.E.2d 314, 317 (1987)). Therefore, plaintiff had the burden to show that the parties contracted for a definite term. *Tolmie v. United Parcel Service, Inc.,* 930 F.2d 579, 580 (7th Cir. 1991).

Hammond has proven that the parties were operating pursuant to an oral agreement, but has produced no evidence that the contract was for a specifically defined period, or that it could not be terminated by either

party for any reason. Mr. Hammond testified that his understanding "was that if we did a good sales job and if we continued to meet our quotas, that there was no reason we couldn't stay with Spalding provided we did that job." [Tr. v. XV, p. 23]. Illinois courts have consistently held that "[s]atisfactory or acceptable performance language does not transform a contract with no definite period—one at-will—into a contract which cannot be terminated by either party at any time for any reason." *Gordon v. Matthew Bender & Co., Inc.,* 562 F.Supp. 1286, 1291 (N.D.Ill. 1983); see also *Ray v. Georgetown Life Ins. Co.,* 94 Ill.App.3d 863, 50 Ill.Dec. 613, 419 N.E.2d 721 (1981) (holding that an employee who was serving under a personal service contract that could be terminated if the employee "fails to perform satisfactorily" was an employee-at-will).

However, Hammond claims that sales quotas communicated by Spalding created an objective event that turned the agreement into one of definite duration. In other words, Hammond argues that the sales quotas changed the at-will nature of the relationship by creating the only condition on which it could be terminated. Hammond cites *Donahue v. Rockford Showcase and Fixture Co.,* 87 Ill.App.2d 47, 230 N.E.2d 278, 281 (1968), as support for its position. In *Donahue,* a salesman entered into a written contract with a manufacturer that provided that he would be paid a commission on each sale that he procured. The contract contained no definite term. Subsequently, the salesman wrote a letter to the manufacturer that stated, "I suggest that if my shipments, in any twelve month period, fall below twenty five thousand, neither gasoline and oil nor commissions would be justified and as a result our agreement would automatically be canceled." *Id.* 230 N.E.2d at 279. This condition was expressly agreed to by the manufacturer. The court originally held that the letter did not change the at-will nature of the contract. However, on rehearing the court held that the letter was a modification of the original contract and provided that, absent mutual consent, neither party could terminate the relationship unless the contingency were met. *Id.* at 281.

■ *Donahue* differs from Hammond's situation because there is no evidence in the record that demonstrates a mutual agreement that Hammond's failure to meet a sales quota was to be a termination of the parties' relationship. Hammond concedes that it did not meet its sales quota for 1985, but continued to operate as a Spalding representative for two additional years.[1] Furthermore, Mr. Hammond testified that it was his understanding that if Hammond "did a good sales job *and* ... continued to meet [its] quotas" then the relationship would continue. Hammond has failed to prove that the sales quotas were intended to be an objective event that converted the agreement into one of a definite term. Spalding is entitled to a directed verdict that its agreement with Hammond was of an indefinite length and therefore was terminable at-will.

## II. *Any Oral Agreement Is Barred By The Illinois Statute of Frauds*

■ In addition to holding that the evidence showed that the agreement did not have a definite term of duration, the district judge found in the alternative that the Illinois Statute of Frauds, 740 ILCS 80/1, barred the agreement. We agree. The plaintiff alleges that in October 1984 the parties entered into an oral agreement specifying performance for the 1985 calendar year, and years beyond provided subsequent conditions were met. Such an agreement could not be completed within one year of its creation, and is therefore barred by the Illinois Statute of Frauds. *Sinclair v. Sullivan Chevrolet*, 31 Ill.2d 507, 202 N.E.2d 516, 518 (1964); *Mapes v. Kalva Corp.*, 68 Ill.App.3d 362, 24 Ill.Dec. 944, 948, 386 N.E.2d 148, 152 (1979).

Hammond claims, however, that the Statute of Frauds should not apply here. First, Hammond argues that it completed performance under the contract, thereby preventing the application of the Statute since "executed, as opposed to executory, contracts are never voided by the Statute of Frauds." *Mapes,* 24 Ill.Dec. at 948, 386 N.E.2d at 152.

Hammond's claim seeks commissions for sales in 1988 and years thereafter. However, Hammond concedes that it was terminated in December 1987. On these facts, the contract may have been "executed" with regard to claims for 1987 commissions (for which Hammond was duly paid), but it was clearly "executory" with regard to 1988 and beyond since Hammond did not perform in those years. The completed performance exception to the Statute of Frauds does not apply.

Next, plaintiff argues that the quota letters from Spalding provided sufficient written and signed materials to remove the agreement from the Statute of Frauds. However, this issue was not raised in the district court and therefore will not be considered on appeal. *United States v. Rode Corp.*, 996 F.2d 174, 179 (7th Cir.1993). Finally, plaintiff argues that the Statute of Frauds defense itself was not timely pleaded to the district court. However, the record demonstrates that Spalding raised the defense in its answer to Hammond's complaint [Supp.App. 241]. Therefore, the defense was adequately pleaded and Spalding was entitled to raise it in the trial court under Fed.R.Civ.P. 12(h)(2).

## III. *Defendant Did Not Agree To Compensate For Commission Shortfalls*

■ As to Count III of the complaint, the trial court determined that plaintiff did not present sufficient proof that defendant had contracted to make up any commission shortfalls. According to Hammond, William McFeeters, defendant's national sales manager, told Hammond sales representatives that defendant would "make it right" if it lost commissions because of Spalding's change to the commission structure. [Tr. v. XIV, p. 42]. However, as the trial court found, there was no consideration for this alleged promise. The statement, taken in the light most favorable to Hammond, was merely a gratuitous promise to enter into a future agreement and was therefore unenforceable. *Wickstrom v. Vern E. Alden Co.*, 99 Ill. App.2d 254, 240 N.E.2d 401, 405 (1968).

---

1. In its brief to this Court Hammond asserts that its failure to meet the 1985 quota was due to Spalding's inability to deliver on Hammond orders. [Pl.Br. 16]. However, Hammond points to no evidence offered at trial substantiating this assertion.

■ Plaintiff attempts to argue that because it relied to its detriment on this alleged promise, the doctrine of promissory estoppel should entitle it to damages on this claim. However, since the plaintiff did not present to the district court the four elements of promissory estoppel, the argument was waived. *LaScola v. U.S. Sprint Communications, Inc.*, 946 F.2d 559, 565 n. 7 (7th Cir.1991).

IV. *Plaintiff Failed To Provide Sufficient Evidence For A Jury To Find It Was Entitled To Any Commissions Under Its Procuring Cause Claim*

■ The district court granted Spalding summary judgment on Hammond's claim for commissions under the common-law doctrine of procuring cause because it concluded that Hammond had not done everything that was necessary to effect the sales in question.[2] Under the procuring cause doctrine, a party "may be entitled to commission on sales made after termination of a contract if that party procured the sales through its activities prior to termination." *Scheduling Corp. of America v. Massello (Massello II)*, 151 Ill.App.3d 565, 104 Ill.Dec. 944, 947, 503 N.E.2d 806, 809 (1987); see also *Dahly Tool Co. v. Vermont Tap and Die Co.*, 742 F.2d 311 (7th Cir.1984). Hammond concedes that it was paid all commissions accrued through February 17, 1988 to which it was entitled. Hammond claims that in addition to those sales for which it was paid a commission, it was a procuring cause for Spalding's sales through the end of 1988 and is therefore entitled to full commissions for the rest of that year.

■ In *Furth v. Incorporated Publishing Corporation*, 823 F.2d 1178 (7th Cir.1987), we required that to recover under the procuring cause doctrine, a plaintiff must sufficiently identify all sales for which it claims credit. *Furth*, 823 F.2d at 1181; see also *Dahly*, 742 F.2d at 314 ("Because the appellant did not allege any order which he actually procured, he is not entitled to commissions based on an extra-contractual remedy like the procuring cause doctrine."). Hammond introduced into evidence numerous invoices demonstrating sales by Spalding personnel, but did not offer any evidence tying specific invoices to efforts made by Hammond. Thus, Hammond failed to prove its procurement performance.

This Court's recent opinion in *Harold Wright Co. v. E.I. DuPont De Nemours & Co.*, 49 F.3d 308 (7th Cir.1995), is not inconsistent with our holding. In *Wright*, this Court reversed a summary judgment in favor of the defendant as being premature, and remanded the case to see if the procuring cause doctrine applied. In addition, this Court stated that Wright might be permitted to recover commissions on orders shipped after the end of its contract if it could prove custom or specific negotiating history of the parties. *Id.* at 310. No such proof has been adduced by Hammond.

V. *The Trial Court Properly Held That Plaintiff Failed To Produce Sufficient Evidence That It Was Entitled To Commissions Under The Illinois Sales Representative Act*

■ Judge Nordberg found that plaintiff did not produce sufficient evidence under Count IV to go to the jury as to whether plaintiff was entitled to exemplary damages and attorney's fees under the Illinois Sales Representative Act, 820 ILCS 120/1 *et seq.*[3]

---

**2.** The district court concluded in the alternative that Spalding was entitled to judgment as a matter of law on this count because the parties had specifically contracted as to when commissions were to be paid, thus making the procuring cause doctrine inapplicable. See *Technical Representatives, Inc. v. Richardson–Merrell, Inc.*, 107 Ill.App.3d 830, 63 Ill.Dec. 668, 671, 438 N.E.2d 599, 602 (1982). The court held that partial performance and the parties' course of dealing indicated that the otherwise indefinite oral agreement under which Hammond was operating included the commission provision of the prior

written contracts, and was therefore enforceable. See *Wald v. Chicago Shippers Association*, 175 Ill.App.3d 607, 125 Ill.Dec. 62, 71, 529 N.E.2d 1138, 1147 (1988).

Since we conclude that defendants are entitled to judgment as a matter of law because plaintiff failed to adequately prove the sales for which it was a procuring cause, we express no opinion as to the district court's alternate holding.

**3.** The relevant portion of the Act provides:

'Sales representative' means a person who contracts with a principal to solicit wholesale

Plaintiff first contends that the court erred in finding that if plaintiff was entitled to any procuring cause commissions, the Illinois Sales Representative Act would entitle it only to commissions earned in Illinois. The district court noted that in 1990 the Act was amended by deleting the language "within this state." Consequently, the court held that until it was amended, the Act applied only to sales solicited in Illinois.[4] Plaintiff has not convinced us that this construction was erroneous.

Plaintiff next contends that the court erred in holding that it was not entitled to commissions on those sales that may have been solicited in Illinois in 1988. However, as previously noted, plaintiff offered no specific proof that it was the procuring cause of any of the sales made by Spalding in 1988. Nor did plaintiff make any attempt to specify in its evidence at trial which sales were procured from Illinois customers. Plaintiff has simply not proven that it should receive the statutory relief provided by the Illinois Sales Representative Act.

### VI. *Summary Judgment For Defendant In Hammond v. Ajay*

Immediately after the trial in the Spalding case, Ajay filed a motion for summary judgment in its case. The trial judge found that plaintiff had represented Ajay only through Ajay's licensee relationship with Spalding, and that plaintiff was therefore barred by issue preclusion. Plaintiff presented no evidence of any separate oral agreement between it and Ajay. Consequently, Ajay's motion for summary judgment was properly granted.

The trial court's orders in the Spalding and Ajay cases are affirmed.

---

orders [within this State] and who is compensated, in whole or in part, by commission, but shall not include one who places orders or purchases for his own account for resale, one who qualifies as an employee of the principal pursuant to the Illinois Wage Payment and Collection Act or one who sells products to the ultimate consumer. 820 ILCS 120/1.

4. The district court based its decision largely upon Magistrate Judge Gottschall's opinion in *Stromsen v. Aluma Shield Industries, Inc.*, Case No. 89 C 5036, 1993 WL 34727, 1993 U.S.Dist. Lexis 1340 (Feb. 3, 1990).