913 N.E.2d 1 (2009)
1515 NORTH WELLS, L.P., Plaintiff-Appellee,
v.
1513 NORTH WELLS, L.L.C., and Thomas Bracken, Indiv., Defendants-Appellants.
(1513 North Wells, L.L.C., Thomas Bracken, and 1515 North Wells, L.P., Counterplaintiffs-Appellants and Cross-Appellees;
SP Development Corporation, Sutherland Pearsall Development Corporation, Mark Sutherland, Alex Pearsall, and Henry Pearsall, Third-Party Defendants-Appellees and Cross-Appellants).
No. 1-07-1881.
Appellate Court of Illinois, First District, Sixth Division.
March 27, 2009.
Rehearing Denied July 15, 2009.
As Modified on Denial of Rehearing July 17, 2009.
*3 Robert A. Chapman of Chapman & Spingola, LLP, Chicago, IL, for Appellant.
Paul W. Carroll and Mark D. Brookstein, of Gould & Ratner LLP, Chicago, IL, for Appellee.

OPINION MODIFIED ON DENIAL OF REHEARING
Justice CAHILL delivered the modified opinion of the court:
The people and companies in this appeal and cross-appeal were part of a limited partnership formed in 1997 to build a condominium *4 with residential and commercial space on the site of an existing building at 1515-17 North Wells Street in Chicago. A health club with the address of 1513 North Wells Street was to occupy retail space in the condominium. The proceedings in the circuit court spanned five years and took place before two different judges. One judge retired during the pendency of the case. The case was reassigned to another judge in 2006. The issues on appeal are breach of contract, breach of fiduciary duty and piercing the corporate veil. For the reasons that follow, we affirm.
We begin, in a search for clarity, by sorting out the people and the overlapping entities in this matter. There are three people involved: Thomas Bracken, Mark Sutherland and Alex Pearsall. Bracken, Sutherland, Pearsall and a fourth person, who is no longer a party in this case, formed 1515 North Wells, L.P. (the limited partnership). Sutherland and Pearsall then created a company, SP Development Corporation, to be the general partner for the limited partnership. Bracken also created a company, 1513 North Wells, L.L.C., to own the health club space (collectively, Bracken).
At the closing to purchase the property that would house the condominiums, rental space and health club, a dispute arose about Bracken's financial commitment to the purchase. An agreement was struck in which the limited partnership "loaned" Bracken $250,000, his share of the purchase price of the property. Bracken signed a promissory note to repay the loan not later than 15 days after he received an accounting from the limited partnership. The note also required that if Bracken disputed the accounting, he would still pay off the note and receive a refund later.
As noted, the general partner in the limited partnership was SP Development Corp., an entity created by Sutherland and Pearsall. The general partner was responsible for hiring a general contractor. It obtained bids from three contractors, including a bid from yet another Sutherland and Pearsall firm, Sutherland and Pearsall Development. Sutherland and Pearsall, acting as the general partner, then chose their own company, Sutherland and Pearsall Development, to be the general contractor. This company was chosen even though it submitted the only bid that failed to state a maximum price for the project.
In 2001, the limited partnership gave Bracken an accounting of the completed project. Bracken did not repay the loan, claiming the accounting was inadequate. In 2002, the limited partnership sued Bracken for breach of contract for failure to repay the loan. Bracken responded with a third-party complaint and counterclaim against Sutherland, Pearsall and the general partner, alleging breach of fiduciary duty. Bracken characterized himself as a "derivative counterplaintiff." His counterclaim alleged harm to the limited partnership by Sutherland and Pearsall's choice of their own company as the general contractor.
A series of motions for summary judgment followed. On February 4, 2003, the limited partnership moved for summary judgment on its claim that Bracken had breached the terms of the note because he had received an accounting but had not repaid the loan. Bracken responded that the financial statement provided by the limited partnership was inadequate as an accounting as a matter of law. On July 11, 2005, the general partner moved for summary judgment on Bracken's claim of breach of fiduciary duty. Sutherland and Pearsall argued that they did not personally owe a fiduciary duty to Bracken and they could not be reached personally because *5 Bracken had not included a count to pierce the corporate veil.
Bracken then cross-moved for summary judgment on his claims of breach of fiduciary duty and breach of contract against Sutherland, Pearsall and the general partner. Bracken argued: "Through a web of interlocking ownership of [the] general partner, and, the entities with which it contracted, * * * [Sutherland and Pearsall] enriched themselves to the exclusion of [the limited partnership]." Bracken did not ask to amend his complaint to include a count to pierce the corporate veil.
In the meantime, the trial court set September 19, 2005, for a bench trial on issues left unresolved by summary judgment. About seven weeks before then, on August 2, 2005, Bracken moved for leave to file an amended counterclaim. He asked to add a count for piercing the corporate veils of the general partner, general contractor and First Chicago Realty, another company owned by Sutherland and Pearsall that served as the broker in the sale of the residential units in the condominium building. The trial court denied Bracken's motion for leave to amend. The trial court later postponed the trial and continued with proceedings on the summary judgment motions.
After considering the parties' written submissions, exhibits and oral arguments, the trial court entered a memorandum opinion dated October 25, 2005, on the motions for summary judgment. The court granted the limited partnership's motion for summary judgment, finding Bracken had been obligated to repay the promissory note in the amount of $250,000 no later than January 8, 2002. The court denied Bracken's motion for summary judgment on his allegations of breach of contract and breach of fiduciary duty but found genuine issues of material fact. These issues included: (1) whether the general partner breached its fiduciary duty to the limited partnership and Bracken; or (2) if the general partner breached the limited partnership agreement by selecting a Sutherland and Pearsall company as general contractor and granting it lucrative benefits. These benefits included a "cost plus fee" contract and the right to keep revenue generated by the sales of condominium upgrades to buyers. The trial court partially granted the general partner's motion for summary judgment, finding, among other things, that Sutherland and Pearsall could not be held personally liable for their acts in their corporate capacities. The trial court also addressed Bracken's proposal to add to his complaint a count of piercing the corporate veils of Sutherland's and Pearsall's firms:
"[Bracken] aver[s] that [he] always intended to prove that [the general partner] and [the general contractor] were merely shell corporations by asking this [c]ourt to pierce the corporate veilyet these allegations are nowhere to be found in the [c]ounterclaim. Rather than raise this argument when the [c]ounterclaim was originally filed, or in almost three years of litigation and motion practice, [Bracken] waited until [Sutherland and Pearsall] raised the issue, or lack thereof, for [Bracken] on the eve of trial. Moreover, instead of formally requesting leave to amend the [c]ounterclaim, [Bracken] [placed] an informal request to amend near the end of [the] [r]esponse to [Sutherland and Pearsall's] [m]otion for [s]ummary [j]udgment. * * * [Bracken's] casual offer to replead [the] [c]ounterclaim is of no helpnot only is it in improper form but it comes in a motion that was filed on an abbreviated briefing schedule and only weeks before their * * * trial was scheduled to begin. In the interests of *6 justice, judicial economy, and all parties' right to due process, the [c]ourt finds that the time for amendment has passed."
The trial court entered a judgment of $447,839.31 against Bracken which included $250,000 due on the note, plus interest and late fees. The order provided that interest would continue to accrue until the judgment was paid and the limited partnership would be allowed to seek reasonable attorney fees and costs of enforcing the note.
Bracken filed motions to reconsider and to stay enforcement, pending the full resolution of all claims. On February 10, 2006, the trial court denied Bracken's motion to reconsider its decisions on the motions for summary judgment but granted his motion to stay enforcement. The court set June 19, 2006, for a trial on the remaining issues. The trial later was postponed.
The bench trial began on December 4, 2006. At the conclusion on December 7, 2006, the trial court entered judgment for Bracken and against the general partner for $900,000 for breach of fiduciary duty. Bracken petitioned for attorney fees. Bracken also moved for reconsideration of the 2005 summary judgment orders in light of the general partner's breach of fiduciary duty. He argued that the court's finding of breach of fiduciary duty canceled the earlier ruling that required him to repay the promissory note. In a written order dated May 15, 2007, the court: (1) found the general partner breached its fiduciary duty to the limited partnership, but not to Bracken personally; (2) refused to reconsider the 2005 summary judgment that obligated Bracken to repay the promissory note before challenging the accounting; and (3) refused to reconsider the earlier denial of Bracken's request to amend his complaint to add piercing the corporate veil. As noted, the first judge in this matter retired during its pendency. That judge, who had denied Bracken's request to amend, was succeeded in August 2006 by the judge who entered the May 15, 2007, order. As to this third ruling, the trial court agreed it was possible for Sutherland and Pearsall to be found individually liable for breach of fiduciary duty under Illinois law, but that Bracken did not raise the argument in a timely fashion. The court declined to reconsider the 2005 ruling on this issue, relying on the retired judge's "privy to the timing of the circumstances."
Bracken moved for clarification and reconsideration. On June 7, 2007, the trial court entered a revised judgment against Bracken of $583,486.78, an increase over the earlier judgment of $447,839.31. The new amount included interest and the limited partnership's attorney fees.
Bracken appeals and Sutherland and Pearsall cross-appeal. The issues are: (1) whether the trial court erred in finding that Bracken breached his agreement to repay the promissory note; (2) whether the trial court abused its discretion in denying Bracken leave to amend his complaint to include piercing the corporate veil of the general partner; and (3) whether the trial court erred in finding that the general partner breached its fiduciary duty to the limited partnership when a paragraph in the limited partnership agreement explicitly allowed all partners to engage in "whatever activities they choose."
Bracken first argues that the trial court erred in refusing to reconsider the 2005 summary judgment against him for breach of contract by failing to pay the promissory note. We review appeals from summary judgments de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill.2d 90, 102, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992). "Summary *7 judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Outboard Marine, 154 Ill.2d at 102, 180 Ill.Dec. 691, 607 N.E.2d 1204. "Construing the language of a contract is a matter of law appropriate for summary judgment." USG Interiors, Inc. v. Commercial & Architectural Products, Inc., 241 Ill.App.3d 944, 947, 182 Ill.Dec. 277, 609 N.E.2d 811 (1993). "If no ambiguity exists in the writing, the parties' intent must be derived by the circuit court, as a matter of law, solely from the writing itself." Quake Construction, Inc. v. American Airlines, Inc., 141 Ill.2d 281, 288, 152 Ill.Dec. 308, 565 N.E.2d 990 (1990).
Here, the promissory note unambiguously provided that Bracken had to repay the note within 15 days of receiving the accounting even if he planned to challenge the accounting. It is undisputed that he did not pay. There are no genuine issues of material fact and the limited partnership was entitled to a judgment as a matter of law.
We note that the parties argued both in the trial court and in their appellate briefs that a central question in this case is what constitutes an accounting as a matter of law. Because of our conclusion that Bracken was not entitled to challenge the accounting regardless of its sufficiency unless he first repaid the note, we do not reach this issue.
Bracken filed a petition for rehearing after this opinion was issued, arguing this court oversimplified the question of whether he received an accounting sufficient to trigger his obligation to pay the note. Bracken contends that under this court's ruling, an "accounting" consisting of numbers jotted on a paper napkin could have triggered his obligation to repay $250,000. We decline to consider this hypothetical question. See People v. Monroe, 118 Ill.2d 298, 300, 113 Ill.Dec. 233, 515 N.E.2d 42 (1987) ("Arguments * * * based [on] hypothetical factual settings will not be considered by a reviewing court"). The trial court's analysis and the record on appeal support the conclusion that Bracken received a compilation of financial information from plaintiffs and that this information was supplemented in response to his requests.
Bracken next argues that the trial court abused its discretion in denying his request to amend his counterclaims to include piercing the general partner's corporate veil. Bracken claims that for 16 months before trial, he repeatedly expressed his intention to add a count of piercing the corporate veil but was not allowed to do so. He directs us to pages in the record that he claims show his statements of intent.
Sutherland and Pearsall argue that Bracken waived this argument by failing to provide an adequate record of the proceeding where he claims he attempted but was barred from adding a count of veil piercing. They rely on Redelmann v. K.A. Steel Chemicals, Inc., 377 Ill.App.3d 971, 977, 316 Ill.Dec. 438, 879 N.E.2d 505 (2007): "Without an adequate record preserving the claimed error, the reviewing court must presume the circuit court had a sufficient factual basis for its holding and that its order conforms to the law.' [Citation.]" It is the appellant's burden to present a sufficiently complete record to support his claims of error. Foutch v. O'Bryant, 99 Ill.2d 389, 391-92, 76 Ill.Dec. 823, 459 N.E.2d 958 (1984).
The pages in the record to which Bracken has directed us do not support his claim that he repeatedly expressed his desire to pierce the corporate veil. Instead, the citations are to documents filed by Bracken that identify the general partner and *8 the general contractor as Illinois corporations. Another citation is to one of Bracken's pleadings that quoted Franz v. Calaco Development Corp., 352 Ill.App.3d 1129, 1137, 288 Ill.Dec. 669, 818 N.E.2d 357 (2004): "`[A] director, officer, or shareholder may be held personally liable for corporate acts only where there is reason to set aside the corporate form.'" This citation appears to be a general proposition of law that Bracken did not connect to a plea for piercing the corporate veils of the firms owned by Sutherland and Pearsall. We find no support for Bracken's assertion that he repeatedly asked to add a count of piercing the corporate veil before his formal request on August 2, 2005, just seven weeks before the trial was set to begin.
Having found no record of Bracken asking to pierce the veil before August 2, 2005, we consider whether his request on that date to amend his counterclaim was timely and should have been granted. Motions to amend are governed by section 2-616 of the Code of Civil Procedure (Code) (735 ILCS 5/2-616 (West 2004)). Section 2-616(a) provides: "At any time before final judgment amendments may be allowed on just and reasonable terms, * * * changing the cause of action or defense or adding new causes of action or defenses." 735 ILCS 5/2-616(a) (West 2004).
Illinois has a liberal policy of allowing the amendment of pleadings, but this right is not unlimited. Lee v. Chicago Transit Authority, 152 Ill.2d 432, 467, 178 Ill.Dec. 699, 605 N.E.2d 493 (1992). A trial court is free to exercise its discretion in granting motions to amend and its decision will not be reversed absent an abuse of discretion. Lee, 152 Ill.2d at 467, 178 Ill.Dec. 699, 605 N.E.2d 493. An abuse of discretion occurs when no reasonable person would agree with the court's decision. People v. Illgen, 145 Ill.2d 353, 364, 164 Ill.Dec. 599, 583 N.E.2d 515 (1991). The factors in deciding whether a trial court abused its discretion on a motion to amend a pleading include: (1) whether the amendment would cure a defect in the pleading; (2) whether the proposed amendment was timely, (3) whether the opposition would be prejudiced or surprised by the amendment; and (4) whether there were earlier opportunities to amend the pleading. Lee, 152 Ill.2d at 467-68, 178 Ill.Dec. 699, 605 N.E.2d 493.
Bracken argues, and we agree, that his amendment would have satisfied the first factor by curing his failure to allege the liability of Sutherland and Pearsall individually as alter egos of their corporations. See In re Rehabilitation of Centaur Insurance Co., 158 Ill.2d 166, 172-73, 198 Ill. Dec. 404, 632 N.E.2d 1015 (1994) (where one corporation wholly owns another and the two have mutual dealings, their status as "separate and distinct legal entit[ies] will be disregarded, and the corporate veil pierced").
As to the second factor, whether Bracken's proposed amendment was timely, Sutherland and Pearsall rely on Tongate v. Wyeth Laboratories, 220 Ill.App.3d 952, 970-971, 162 Ill.Dec. 801, 580 N.E.2d 1220 (1991), where a motion to amend was not timely when it "came five weeks before trial, after discovery had been closed and after the case had been pending for nine years." See also Trans World Airlines, Inc. v. Martin Automatic, Inc., 215 Ill. App.3d 622, 628, 159 Ill.Dec. 94, 575 N.E.2d 592 (1991) (a motion to amend was properly denied where a counterplaintiff attempted to amend a counterclaim six years after it was filed and offered no excuse for waiting six years).
Here, Bracken first filed his counterclaims in October 2002. He did not ask to pierce the corporate veil until nearly three years later, on August 2, 2005. At that *9 time, the trial was set to begin in about seven weeks on September 19, 2005. Only later was the trial postponed. Given these time frames, the trial court's refusal in 2007 to revisit the 2005 denial of Bracken's motion to amend was not improper under a reasonable person standard. Illgen, 145 Ill.2d at 364, 164 Ill.Dec. 599, 583 N.E.2d 515.
As to the prejudice or surprise factor, this court in Tongate held that a trial court does not abuse its discretion in denying a motion to amend where there were earlier opportunities to add a new cause of action and the late addition of the new claim could cause prejudice by requiring additional time to prepare a response. Tongate, 220 Ill.App.3d at 970-71, 162 Ill.Dec. 801, 580 N.E.2d 1220. As we have noted, Bracken had three years to amend his counterclaim and did not do so. We believe that requiring Sutherland and Pearsall to respond in less than seven weeks' time to a motion to pierce the corporate veil after three years of motion practice would have been prejudicial.
Alternatively, Bracken argues he was entitled to amend his counterclaim to conform his pleadings to the proof. Section 2-616(c) of the Code provides: "A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs." 735 ILCS 5/2-616(c) (West 2004). Bracken cites Mapes v. Kalva Corp., 68 Ill.App.3d 362, 366-67, 24 Ill.Dec. 944, 386 N.E.2d 148 (1979), to argue that it was an abuse of discretion for the court to deny this request to amend. In Mapes, we held that the defendant should have been allowed to amend his answer because a defense that was not applicable to the facts in the complaint became applicable after the plaintiff presented its case. Mapes, 68 Ill.App.3d at 366-67, 24 Ill.Dec. 944, 386 N.E.2d 148.
Here, the trial had not been held when Bracken asked to amend his counterclaim. No proofs had been produced. Proofs must already have been produced before the amendment of a pleading to conform to the proof will be allowed. Harding v. Amsted Industries, Inc., 276 Ill.App.3d 483, 494, 213 Ill.Dec. 187, 658 N.E.2d 1208 (1995).
Bracken argues in his petition for rehearing that his posttrial request to pierce the corporate veil was effectively a motion to conform the pleadings to the proofs under section 2-616(c) (735 ILCS 5/2-616(c) (West 2004)). As stated earlier in this opinion, the factors to be considered in deciding whether amendments to pleadings should be allowed are set forth in Lee, 152 Ill.2d at 467-68, 178 Ill.Dec. 699, 605 N.E.2d 493. These factors include an assessment of whether there were earlier opportunities to amend the pleading. Lee, 152 Ill.2d at 468, 178 Ill.Dec. 699, 605 N.E.2d 493. Here, there were ample opportunities before the posttrial motion for Bracken to add to his complaint a count of piercing the corporate veil. The record shows, and Bracken does not deny, that he knew before and during the litigation that Sutherland and Pearsall were the principles in SP Development Corp. and Sutherland Pearsall Development. We conclude on these grounds that the trial court did not abuse its discretion in denying Bracken's posttrial motion to amend the complaint to conform to the proof that Sutherland and Pearsall were involved in the general partner and general contractor corporations.
Bracken's second alternative argument on appeal is that the trial court should have acted sua sponte to pierce the corporate veil regardless of whether his motion to amend was pled properly. Our decision in Tower Investors, LLC v. 111 East Chestnut Consultants, Inc., 371 Ill. App.3d 1019, 1033, 309 Ill.Dec. 686, 864 N.E.2d 927 (2007), resolves this argument. *10 "Where there is no evidence of any misrepresentation, no attempt to conceal any facts, and the parties possess a total understanding of all of the transactions involved, Illinois courts will not pierce the corporate veil in a breach of contract situation." Tower, 371 Ill.App.3d at 1034, 309 Ill.Dec. 686, 864 N.E.2d 927. Efforts to pierce the corporate veil will be unsuccessful when the evidence shows the complaining party entered into the situation with full knowledge of the relationships among the players and no injustice occurred. Tower, 371 Ill.App.3d at 1034-35, 309 Ill. Dec. 686, 864 N.E.2d 927.
Here, the record does not show and Bracken does not allege that he was deceived by misrepresentation or concealment by Sutherland and Pearsall. Nor does he allege that he failed to understand that there were close interrelationships between Sutherland and Pearsall, the general partner and the general contractor. Under Tower, there was no reason for the trial court to act sua sponte to pierce the corporate veil. Bracken had full knowledge of the relationships among the parties. Tower, 371 Ill.App.3d at 1034-35, 309 Ill.Dec. 686, 864 N.E.2d 927.
To avoid this result, Bracken argues that we should adopt the holding of a Delaware chancery court decision. In re USACafes, L.P. Litigation, 600 A.2d 43, 49-50 (Del.1991). The trial court cited this case in its May 15, 2007, memorandum order and opinion, noting: "In Delaware, when control over corporate property is recognized to be in the hands of shareholders who controlled the enterprise, the fiduciary obligation extends to the controlling shareholders." Bracken uses this reference to argue that under USACafes, it would be unnecessary for him to plead piercing of the corporate veil because Sutherland and Pearsall already would be outside the corporate veil as the controlling shareholders of the general partner.
Illinois has not adopted the view taken in USACafes. In Illinois, a corporation is "an entity separate and distinct from its officers, shareholders, and directors, and those parties will not be held personally liable for the corporation's debts and obligations." Tower, 371 Ill. App.3d at 1033, 309 Ill.Dec. 686, 864 N.E.2d 927. We see no reason to depart from well-established Illinois law by adopting Bracken's proposed extension of USA-Cafes to find that Sutherland and Pearsall are outside the corporate veil.
We now turn to the general partner's cross-appeal of the trial court's finding that it breached its fiduciary duty to the limited partnership. The general partner argues that the trial court erred in failing to consider paragraph 1.7 of the limited partnership agreement. This paragraph provided:
"The General Partner and each Limited Partner may, notwithstanding this Agreement, engage in whatever activities they choose, whether the same are competitive with the Partnership or otherwise, without having or incurring any obligation to offer any interest in such activities to the Partnership or any Partner. * * * Mark Sutherland and Alexander Pearsall are principals in development companies which may receive a [commission] from the sale of the property, or fees for the construction of the property. Said commission and/or fees will be paid by the Limited Partnership."
The proceedings from the trial show the court's consideration of this provision:
"In short, I believe that the general partner saw opportunities that while the limited partnership might lose money, that the various entities owned by the general [partner] would make money if they continued forward on this bad deal for the limited partnership. * * * I *11 don't believe that you can ever contract away your fiduciary duty to your other partners.
[Paragraph] 1.7 attempts to make it look like it's a two-way street in that the limited partners could also do the same thing. When you look at the situation in its totality, it's not really a two-way street, but a one-way street allowing the general partner to go forward. Because the limited partner is merely that[:] a limited partner invested in the partnership. The general partner is the managing partner of the partnership and has these [fiduciary] duties in relation to the limited partnership."
The general partner argues that paragraph 1.7 did in fact relax the parties' fiduciary duties to each other. It maintains that our review must be de novo because we are reviewing the language of the agreement, citing LID Associates v. Dolan, 324 Ill.App.3d 1047, 1070-71, 258 Ill.Dec. 592, 756 N.E.2d 866 (2001) (this court uses de novo review to interpret the plain language of a partnership agreement). We disagree. The language of paragraph 1.7 is not in dispute. Instead, the question before us is whether the general partner's actions constituted a breach of fiduciary duty to the limited partner despite paragraph 1.7.
Our standard of review is whether the trial court's finding of breach of fiduciary duty was against the manifest weight of the evidence. Dowd & Dowd, Ltd. v. Gleason, 352 Ill.App.3d 365, 373, 287 Ill.Dec. 787, 816 N.E.2d 754 (2004). When a decision is supported by the manifest weight of the evidence, the result is clear, plain and indisputable. Dowd, 352 Ill.App.3d at 373, 287 Ill.Dec. 787, 816 N.E.2d 754.
"[A] fiduciary relationship exists between partners and each is bound to exercise the utmost good faith in all dealings and transactions related to the partnership." Seymour v. Williams, 249 Ill. App.3d 264, 269, 188 Ill.Dec. 396, 618 N.E.2d 966 (1993). "To state a claim for breach of fiduciary duty, a plaintiff must establish (1) a fiduciary duty on the part of the defendant, (2) the defendant's breach of that duty, and (3) damages that were proximately caused by the defendant's breach." DOD Technologies v. Mesirow Insurance Services, Inc., 381 Ill.App.3d 1042, 1046, 320 Ill.Dec. 221, 887 N.E.2d 1 (2008).
Under section 103(b)(3) of the Uniform Partnership Act, a partnership agreement may not "eliminate or reduce a partner's fiduciary duties." 805 ILCS 206/103(b)(3) (West 2004). Language in an agreement that allows the partners discretion in certain areas "does not metamorphose the document into an unrestricted license to engage in self-dealing at the expense of those to whom the managing partner owes such a duty." Labovitz v. Dolan, 189 Ill.App.3d 403, 416-17, 136 Ill. Dec. 780, 545 N.E.2d 304 (1989). There is no authority "for the proposition that there can be a priori waiver of fiduciary duties in a partnership." Labovitz, 189 Ill.App.3d at 417, 136 Ill.Dec. 780, 545 N.E.2d 304. "Nor is the practice of imposing purported advance waivers of fiduciary duties in limited partnership enterprises to be given judicial recognition." Labovitz, 189 Ill. App.3d at 417, 136 Ill.Dec. 780, 545 N.E.2d 304.
Here, there was ample evidence to support the court's finding of a breach of fiduciary duty, including the "cost plus fee" contract that the general partner awarded to the general contractor and the profits from condominium upgrades that went to the general contractor, not to the limited partnership. Paragraph 1.7 of the limited partnership agreement did not immunize the partners against liability for breach of fiduciary duty. The trial court correctly concluded Bracken's acceptance of paragraph *12 1.7 did not "contract away" the fiduciary duty that a general partner owes to limited partners.
In summary, we conclude: (1) the trial court did not err in refusing to reconsider the 2005 summary judgment in the limited partnership's favor where the promissory note unambiguously stated that Bracken had to repay the note before challenging the accounting; (2) the trial court did not abuse its discretion in denying Bracken's motion for leave to amend his counterclaim to add a count of piercing the corporate veil because the motion was untimely; and (3) the trial court did not err in finding the general partner breached its fiduciary duty to Bracken despite the language in paragraph 1.7 of the limited partnership agreement.
The judgment of the circuit court is affirmed.
Affirmed.
O'MALLEY, P.J., and McBRIDE, J., concur.